## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## ROBERT CLAY UNDERWOOD V. COMMONWEALTH OF VIRGINIA

April 21, 1978.

Record No. 770808.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Compton, JJ.

*E. Eugene Gunter* for plaintiff in error.

*Jim L. Chin, Assistant Attorney General (Anthony F. Troy, Attorney General,* on brief) for defendant in error.

HARMAN, J., delivered the opinion of the Court.

After a jury trial, Robert Clay Underwood (Underwood or defendant) was convicted of feloniously and maliciously burning or destroying personal property of the value of $100 or more in violation of Code § 18.2-81. The jury fixed his punishment at confinement in the penitentiary for a term of eight years. We awarded a writ of error to the final judgment confirming the conviction and imposing sentence.

The only issue raised on appeal is the sufficiency of the evidence of criminal agency to sustain this conviction. In such circumstances, we must consider the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Andrews v. Commonwealth,* 216 Va. 179, 217 S.E.2d 812 (1975).

The evidence shows that an unattended police car owned by the Frederick County Sheriff's Department and assigned to Deputy Sheriff Raymond Pannell (Pannell) was destroyed by fire at approximately 4:00 A.M. on May 26, 1976. The car was parked at an apartment development where Pannell resided in the City of Winchester. Upon returning from work the preceding day, Pannell parked his car, and, after ascertaining that all of the windows were closed, locked it.

When the fire was reported around 4:00 A.M., the fire department and several policemen responded to the alarm. When the first officer arrived at the scene, he observed fire in the interior of the car, but saw no flames emanating from either the hood or the trunk of the vehicle.

While the firemen were still fighting the fire, a dark blue station wagon owned by the defendant's brother, David Underwood (David), was observed approaching the scene. David, a convicted arsonist, had been released from police lockup earlier that night. Frank Drescher (Drescher) was driving the station wagon, and the defendant and his brother were passengers. The officers observed the station wagon stop, turn around, and speed away in the direction from whence it came.

Several officers took up pursuit of the station wagon and followed it until it stopped near David's apartment in the same development. The officers then arrested the occupants of the station wagon and seized two gasoline cans containing the residue of a flammable liquid and a rubber hose which were in plain view inside the vehicle. The officers also seized a sheath knife which they discovered under the front seat of the station wagon and a hunting knife disclosed by a search of the defendant's person.

The evidence further reveals that the defendant and his two companions had left the apartment of one of David's neighbors, Wanda Damastus, at around 3:30 A.M. on the morning of the fire. As he was leaving, the defendant's hostess overheard him say that "he wanted to go because they had some business to take care of."

Subsequent examination of the police car disclosed that one of the front tires had been punctured in several places by a sharp instrument. This examination also disclosed that the fire originated on and about the right front seat inside the passenger compartment. The defendant concedes that the scientific evidence establishes the *corpus delicti* of the crime, that the fire was of incendiary origin.

The only other testimony linking the defendant with the fire is a statement which he subsequently made to Sergeant Karinshak (Karinshak) of the Arlington County Police Department in a conversation with that officer on the night of September 7-8, 1976. Prior to that conversation, Karinshak did not know that a police car had been burned in Winchester.

Karinshak testified that the defendant said he, his brother and Drescher were riding around in a station wagon in Winchester, "when they saw a Deputy Sheriff's cruiser parked." Underwood told Karinshak that "David got out of the car, approached the cruiser, busted out the front passenger side window with a hammer, poured some fuel oil all over the seat and then tossed a match inside." After the police car "[b]urst into flames [,] [we] got back into the [station wagon] . . . and left the scene. [We] rode around for awhile, later [we went] back to the scene where [we] were stopped by the police and arrested."

■ To convict the defendant of the crime with which he was charged, arson of personal property, the Commonwealth had the burden of proving that the fire which burned the police car was of incendiary origin and that the defendant was a criminal agent in the burning. *Simmons* v. *Commonwealth*, 208 Va. 778, 782, 160 S.E.2d 569, 573 (1968). In light of the defendant's concession that the evidence establishes the incendiary origin of the fire, we need focus only upon whether the evidence is sufficient to establish the criminal agency of the defendant.

■ Saying that the evidence of criminal agency is "purely circumstantial", Underwood argues that the evidence of his mere presence "amounts to no more than isolated fact" creating, at most, a suspicion or probability of guilt. The defendant also argues that the circumstances proven, while they may be consistent with guilt, do not exclude every reasonable hypothesis of the defendant's innocence.

It is well settled that mere presence and consent will not suffice to constitute one an aider and abettor in the commission of a crime. This principle is well stated in *Jones* v. *Commonwealth*, 208 Va. 370, 373, 157 S.E.2d 907, 909 (1967), where we pointed out:

"[M]ere presence and consent are not sufficient to constitute one an aider and abettor in the commission of a crime. 'There must be something done or said by him showing (a) his consent to the felonious purpose and (b) his contribution to its execution. To make him an aider or abettor, he must be shown to have 'procured, encouraged, countenanced, or approved' the commission of the crime. * * * To constitute one an aider and abettor, it is essential that he share the criminal intent of the principal or party who committed the offense.' 1A Mich. Jur.

Accomplices and Accessories § 4, pp. 66, 67, and cases there collected."

■ The principles of law applicable to weighing circumstantial evidence are also well settled.

"When the evidence is wholly circumstantial, as here, all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence. The chain of necessary circumstances must be unbroken. Nevertheless, it is within the province of the jury to determine what inferences are to be drawn from proved facts, provided the inferences are reasonably related to those facts. The burden is upon the Commonwealth to prove beyond a reasonable doubt that motive, time, place, means, and conduct concur in pointing out the accused as the perpetrator of the crime." *Inge* v. *Commonwealth*, 217 Va. 360, 366, 228 S.E.2d 563, 567-568 (1976).

■ Unlike *Simmons* v. *Commonwealth, supra,* where we found "lacking that essential degree of proof that the defendant, either acting alone or in concert with one or both of his companions, was the arsonist", 208 Va. at 782, 160 S.E.2d at 573, here we have the defendant's own statement to Sergeant Karinshak that he was present when an incendiary fire was set by his brother. The evidence also discloses that the defendant continued in the company of his brother and Drescher, although he was then fully aware that his brother had engaged in the arson of the police car. At the time of his arrest, the police found a hunting knife, a sharp instrument, concealed on the defendant's person. One of the front tires on the car had been punctured in several places with a sharp instrument.

The scientific evidence confirmed the defendant's statement to Sergeant Karinshak about the point of origin of the fire and that the fire was set with a flammable liquid. Gasoline cans containing the residue of a flammable liquid were discovered in the station wagon. There is evidence of flight by the occupants of the station wagon when they observed the police at the scene of the fire. Finally, there is the important evidence of defendant's statement at 3:30 A.M., no more than 30 minutes before the fire was discovered, that he and his companions "had some business to take care of", indicating that he and his companions were embarking upon a joint undertaking.

With those proven facts before it, it was reasonable for the jury to conclude that the defendant was a principal either in the first or second degree to the arson, so the judgment of conviction will be affirmed.

*Affirmed.*