COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Felton, Judges Elder, Frank, Humphreys, Clements, Kelsey, McClanahan,
          Haley, Petty, Beales and Millette[*]
Argued at Richmond, Virginia


JAMI DAWN DUNN
                                                              OPINION  BY
v.      Record No. 1370-06-3                      JUDGE ELIZABETH A. McCLANAHAN
                                                            SEPTEMBER 9, 2008
COMMONWEALTH OF VIRGINIA


UPON REHEARING EN BANC

FROM THE CIRCUIT COURT OF THE CITY OF WAYNESBORO
Humes J. Franklin, Jr., Judge

        Dana R. Cormier for appellant.

        Benjamin H. Katz, Assistant Attorney General (Robert F.
        McDonnell, Attorney General, on brief), for appellee.


        A jury convicted Jami Dawn Dunn of possession of methamphetamine with the intent to

distribute as a principal in the second degree and possession of marijuana with the intent to

distribute as a principal in the second degree.  Dunn contends on appeal the evidence was

insufficient to support her convictions.  A panel majority of this Court agreed with Dunn and

reversed the judgment of the trial court.  We granted a petition for rehearing *en banc* and stayed

the mandate of the panel decision.  Upon rehearing *en banc*, we affirm the trial court.

                                     I.  BACKGROUND

        On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (citation omitted).

---

        [*] Justice Millette participated in the hearing and decision of this case prior to his
investiture as a Justice of the Supreme Court of Virginia.

That principle requires us to "'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" Kelly v. Commonwealth, 41 Va. App. 250, 254, 584 S.E.2d 444, 446 (2003) (*en banc*) (quoting Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998)). See also Bolden v. Commonwealth, 275 Va. 144, 147-48, 654 S.E.2d 584, 586 (2008); Molina v. Commonwealth, 272 Va. 666, 671, 636 S.E.2d 470, 473 (2006); Viney v. Commonwealth, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005); Walton v. Commonwealth, 255 Va. 422, 425-26, 497 S.E.2d 869, 871 (1998).

So viewed, an informant for the Waynesboro Police Department made a controlled purchase[1] of methamphetamine from Christopher Harlow in the residence he shared with his fiancée, Jami Dawn Dunn, and their three-year-old son. At the time of the drug purchase, Detective John Webb was located within close range and listening in on the wire being worn by the informant. The informant paid $225 for an eighth of an ounce of methamphetamine, also referred to as an "eight-ball." Dunn and the child were present at the residence during the transaction.

On the following day, police executed a narcotics search warrant to search Dunn's and Harlow's residence. When the search warrant was executed, Dunn, Harlow, and their son were sitting in the living room. On an end table next to the sofa on which Dunn and her son were seated, police found rolling papers, silver postal scales, and a glass-smoking device containing marijuana residue. In the top drawer of another end table located opposite the sofa on which Dunn was seated, police found two bags of marijuana and a bag containing methamphetamine. According to Detective Webb, the quantities of marijuana and methamphetamine in two of the

---

[1] A controlled purchase means the informant is provided money, wired for sound, and directed to make a purchase under police supervision.

bags were not consistent with personal use.[2] The amount of marijuana in one of the bags measured 23.5 grams and the amount of methamphetamine was a little less than an eight-ball. The contents of an additional bag of marijuana were consistent with personal use. Below the top drawer of the same table in an area open from the front, police found multiple plastic bags used for packaging drugs, a plastic bag containing partially burned marijuana cigarettes, several smoking devices, a lighter, knife, and screens associated with smoking drugs that contained marijuana residue. In a blue drawstring bag located in the same area, police found more drug paraphernalia including a sunglasses case containing a spoon for scraping out methamphetamine to smoke, screens and glass devices for smoking methamphetamine containing residue, and a "one-hitter" used for smoking marijuana. The police also found in the kitchen sink a water bong for smoking marijuana.

In a drawer underneath the sink in the downstairs bathroom, police found aluminum foil and a straw used for smoking methamphetamine. Police also discovered a plastic bag with the corner cut out which, as Detective Webb testified, is typical for packaging drugs for sale. In Dunn's manicure kit, police found a plastic bag corner containing .2 gram of methamphetamine (an amount consistent with personal use), scissors used for cutting plastic bag corners, and a twist-tie, also associated with packaging drugs for sale.

Detective Webb testified that as he retrieved these items she said nothing. While he was at Dunn's residence, she admitted she knew that "dope" was in the residence and that it was being sold. Webb testified that most people who use the term "dope" are referring to methamphetamine but that term may also be used to refer to marijuana and other drugs. After

---

[2] Dunn's possession of quantities inconsistent with personal use could have supported a conviction of possession with intent to distribute as a principal in the first degree. Gregory v. Commonwealth, 22 Va. App. 100, 110, 468 S.E.2d 117, 122 (1996) ("Possession of a quantity greater than that ordinarily possessed for one's personal use may be sufficient to establish an intent to distribute." (internal quotations and citation omitted)).

her arrest, Dunn told Webb she only knew about the marijuana sales and was referring only to marijuana when she told him "dope" was being sold in the home.

When Harlow was questioned by Webb, he admitted to possessing and selling both marijuana and methamphetamine. Harlow also told Webb he intended to sell the methamphetamine found in the plastic bag but had pinched off some for his own use which is why the amount found in the plastic bag was slightly less than an eighth of an ounce. Harlow initially told Webb that Dunn did not know about the drug sales. Harlow later told Webb Dunn only knew of and was present in the residence during the marijuana sales and did not know methamphetamine was in the residence. However, when Webb pointed out to Harlow that Dunn was present during the controlled purchase of methamphetamine, Harlow conceded Dunn's knowledge and presence.[3]

During Dunn's trial, Harlow admitted Dunn was in the residence at the time of the controlled purchase but maintained Dunn was unaware that methamphetamine was in the residence or that it was being sold.[4] He also testified that neither he nor Dunn were employed and he sold the marijuana to produce income for their living expenses. In fact, he testified he had no other means to make money for his family and that both he and Dunn used the money he made to support themselves noting he didn't "believe that any woman should have to work as long as they have a man willing to take care of them." Harlow also admitted he was an habitual

---

[3] The jury was instructed to consider this evidence as only bearing on Harlow's credibility. Jury Instruction No. 12.

[4] The trier of fact was not required to accept Harlow's testimony regarding Dunn's lack of knowledge about the methamphetamine, but instead was free to "rely on it in whole, in part, or reject it completely." Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991).

user of methamphetamine, that Dunn had also acquired a methamphetamine habit, and both used pinches from the methamphetamine he sold to support their habits.[5]

## II. ANALYSIS

Dunn contends on appeal the evidence was insufficient to support her convictions of possession with intent to distribute as a principal in the second degree. We disagree.

To hold Dunn accountable as a principal in the second degree, the Commonwealth was required to show that Dunn was present, aiding and abetting Harlow. McGill v. Commonwealth, 24 Va. App. 728, 733, 485 S.E.2d 173, 175 (1997).

> A principal in the second degree is one not the perpetrator, but present, aiding and abetting the act done, or keeping watch or guard at some convenient distance. * * * Every person who is present at the commission of a [crime], encouraging or inciting the same by words, gestures, looks, or signs, or who in any way, or by any means, countenances or approves the same is, in law, assumed to be an aider and abettor, and is liable as principal.

Foster v. Commonwealth, 179 Va. 96, 99, 18 S.E.2d 314, 315-16 (1942) (internal quotation marks and citation omitted); see also Pugliese v. Commonwealth, 16 Va. App. 82, 428 S.E.2d 16 (1993).

On appeal, when considering a challenge to the sufficiency of the evidence, "we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)); see also McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*). Stated otherwise, a reviewing court does not "ask itself whether *it* believes that the evidence at the trial established

---

[5] At trial, Harlow made inconsistent statements about how many times he had sold methamphetamine. At one point, he testified he only sold the methamphetamine the one time during the controlled purchase to help a friend. However, he also admitted he planned to sell the methamphetamine found in the bag at his house the day after the controlled purchase. Later in his testimony, Harlow admitted he and Dunn supported their own methamphetamine habits by pinching off pieces from eight-balls he sold.

guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original; citation and internal quotation marks omitted). Rather, "the relevant question is whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. Furthermore, "[t]his Court does not substitute its judgment for that of the trier of fact." Hunley v. Commonwealth, 30 Va. App. 556, 559, 518 S.E.2d 347, 349 (1999) (citing Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992)).

The Supreme Court of Virginia and the Court of Appeals of Virginia have recognized that one who is present at a crime and does not oppose it can be guilty of aiding and abetting if the existence of other circumstances allow the fact finder to infer that the accused assented to and lent his countenance and approval to the crime. See Foster, 179 Va. 96, 18 S.E.2d 314, and Pugliese, 16 Va. App. 82, 428 S.E.2d 16.[6] For example, in Foster, where defendant's wife was living and working in a house of prostitution and defendant moved into the house and stayed in a room adjoining his wife's room, the Supreme Court of Virginia found the evidence sufficient to prove he was an aider and abettor of the prostitution. 179 Va. at 98-99, 18 S.E.2d at 315. The Court reasoned the defendant knew of the business going on in the house when he moved in, he must have known that part of his wife's proceeds maintained the house, and thus had an interest in the ongoing criminal activity. Id. at 100, 18 S.E.2d at 316. As the Court stated, while mere presence when the crime is committed is not sufficient to render the defendant guilty as an aider or abettor,

---

[6] It is Dunn's presence during Harlow's possession with intent to distribute, not her presence at the drug sales in a particular room, that makes Foster binding and Pugliese applicable. There is no question she was present in the residence during Harlow's possession of marijuana and methamphetamine with intent to distribute. Her presence in the residence during the drug sales simply bolsters the "other circumstances" we find exist.

- 6 -

it is certain that proof that a person is present at the commission of a crime without disapproving or opposing it, is evidence from which, in connection with other circumstances, it is competent for the jury to infer that he assented thereto, lent to it his countenance and approval, and was thereby aiding and abetting the same.

Id.

In Pugliese, defendant argued he was merely present when the perpetrator committed robbery and murder but there was no evidence he acted in concert with the perpetrator or aided or abetted him. 16 Va. App. at 92-93, 428 S.E.2d at 24. As we noted, the defendant knew the perpetrator intended to rob or commit some crime against the victim and did nothing to discourage him. Thus, he bolstered the perpetrator's resolve and thereby aided and abetted him. Id. at 94, 428 S.E.2d at 25. Defendant subsequently assisted in disposing of the victim's vehicle and shared in the proceeds of the robbery. We held the evidence sufficient to support his conviction for robbery and murder in the second degree noting:

When viewed in the light most favorable to the Commonwealth, and granting to it all reasonable inferences, the jury reasonably could have concluded from the facts that Pugliese knew beforehand of [the perpetrator's] criminal intent and, because he assisted in disposing of the van and received part of the proceeds of the robbery/murder, that he shared [the perpetrator's] criminal intention.

Id. at 94-95, 428 S.E.2d at 25.

The evidence in this case established both Dunn and Harlow possessed marijuana and methamphetamine in a home they shared with their three-year-old son. Harlow admitted his intention to sell the drugs, and Dunn was present during Harlow's possession of the drugs with intent to distribute them, a crime to which he pled guilty. Dunn was present in the residence during the marijuana and methamphetamine drug transactions as evidenced from Harlow's testimony and Webb's testimony about listening on the wire. Before her arrest, Dunn told Webb that she knew

"dope" in the home was being offered for sale.[7] The quantity of some of the drugs and other items found in Dunn's home were consistent with distribution – not personal use.[8] Neither Harlow nor Dunn was employed at the time of their arrest, and they relied on the income from the sale of the marijuana to support their family.[9] Further, Dunn relied on "pinches" from the methamphetamine Harlow sold to support her own drug habit.[10]

Dunn's consent to the drug sales in her home, her reliance on the income from the marijuana sales for her livelihood, and her reliance on the pinches from the methamphetamine to support her own drug habit supplied the "other circumstances" from which the jury, as the trier of fact to whom we must defer, could infer Dunn "assented" to the possession of the drugs with intent to distribute and "lent to it [her] countenance and approval, and was thereby aiding and abetting the same." Id. at 94, 428 S.E.2d at 25 (internal quotation marks omitted).

For these reasons, we affirm the trial court's judgment.

Affirmed.

---

[7] Although the dissent suggests there is more than one inference that can be made from Webb's testimony about the "dope," we view all inferences in the light most favorable to the Commonwealth. See Kelly, 41 Va. App. at 254, 584 S.E.2d at 446.

[8] As we noted previously, Dunn's possession of quantities inconsistent with personal use could have supported a conviction of possession with intent to distribute as a principal in the first degree. Gregory, 22 Va. App. at 110, 468 S.E.2d at 122 ("Possession of a quantity greater than that ordinarily possessed for one's personal use may be sufficient to establish an intent to distribute." (internal quotations and citation omitted)).

[9] Dunn argues there was no evidence she relied on income from drug sales. However, no member of the household was employed and they all lived on the money Harlow made from his drug sales. The jury was certainly free to make the reasonable inference that they relied on this income.

[10] We reject Dunn's suggestion that the courts have required some degree of connection between the "other circumstances" and the commission of the crime. Moreover, we fail to see how Dunn's reliance on the income from the sales of marijuana and her reliance on the pinches from methamphetamine were not connected to Harlow's drug sales.

Elder, J., dissenting.

The evidence clearly supports a finding that Jami Dunn possessed marijuana and methamphetamine, that she and Christopher Harlow were users of the illegal substances, and that Harlow possessed the substances with an intent to distribute them. However, I believe the evidence in the record is insufficient to prove Dunn intended to distribute either the marijuana or the methamphetamine. Thus, I would conclude the evidence fails to prove Dunn's guilt beyond a reasonable doubt as a principal in either the first or the second degree, and I respectfully dissent from the majority's affirmance of Dunn's convictions.

I believe the majority recites some of the facts in too summary a fashion and draws inferences not supported by the evidence under our standard of review. I agree that, on appeal, we must "'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" Kelly v. Commonwealth, 41 Va. App. 250, 254, 584 S.E.2d 444, 446 (2003) (en banc) (quoting Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998)). It is also true that it is within the province of the trier of fact to assess the credibility of the witnesses and to resolve any conflicts in their testimony. Lea v. Commonwealth, 16 Va. App. 300, 304, 429 S.E.2d 477, 479 (1993). The trier of fact may conclude that any witness has lied and choose to reject his or her testimony in part or in whole on that basis. Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993). The rejection of that testimony, however, does not provide substantive evidence proving that the opposite is true. Tarpley v. Commonwealth, 261 Va. 251, 256-57, 542 S.E.2d 761, 764 (2001).

Further, our jurisprudence makes clear that when a witness' credibility is impeached using a prior inconsistent statement made out of court, that prior inconsistent statement is

hearsay and is admissible for impeachment only, not to prove the truth of the matter asserted.

Hall v. Commonwealth, 233 Va. 369, 374, 355 S.E.2d 591, 595 (1987).

> [T]he common-law rules of evidence, to which we adhere, have consistently required that when such statements are offered for impeachment, the opposing party is entitled, upon request, to a cautionary instruction advising the jury that the statements are to be considered only insofar as they may affect the credibility of the witness, and may not be considered as proof of the truth of their content.

Id. In appellant's case, as the majority acknowledges, the jury in fact was instructed in keeping with this principle.

Thus, in reviewing the sufficiency of the evidence on appeal, we may not consider as substantive evidence any testimony that was admitted for impeachment purposes. The record, aside from the rejected evidence, must contain facts or reasonable inferences from those facts that prove the elements of the offense at issue. "It can be safely said that in Virginia there is no principle more firmly imbedded in the body of the law, or one that has been more often stated, than the principle that in every criminal case the evidence of the Commonwealth must show, beyond a reasonable doubt, every material fact necessary to establish the offense for which a defendant is being tried." McGhee v. Commonwealth, 219 Va. 560, 561, 248 S.E.2d 808, 810 (1978). "[W]here a fact is equally susceptible of two interpretations one of which is consistent with the innocence of the accused, [the trier of fact] cannot arbitrarily adopt that interpretation which incriminates [the accused]." Corbett v. Commonwealth, 210 Va. 304, 307, 171 S.E.2d 251, 253 (1969).

A defendant is equally liable as a principal in the second degree if the Commonwealth proves he "intended his words, gestures, signals, or actions to in some way encourage, advise, or urge, or in some way help the person committing the crime to commit it." Ramsey v. Commonwealth, 2 Va. App. 265, 269, 343 S.E.2d 465, 468 (1986). "*[M]ere presence and*

*consent*," however, "*will not suffice*." Underwood v. Commonwealth, 218 Va. 1045, 1048, 243 S.E.2d 231, 233 (1978) (emphasis added). "The prosecution must prove that the accused did or said something showing his consent to the felonious purpose and his contribution to its execution . . . . [H]e must share the criminal intent of the actual perpetrator or be guilty of some overt act." Hall v. Commonwealth, 225 Va. 533, 536, 303 S.E.2d 903, 904 (1983).

It is true, as the majority indicates, that the Supreme Court has held that "proof that a person is present at the commission of a crime without disapproving or opposing it, is evidence from which, *in connection with other circumstances*, . . . the jury [may] infer that he assented thereto, lent his countenance and approval, and was thereby aiding and abetting same." Foster v. Commonwealth, 179 Va. 96, 100, 18 S.E.2d 314, 316 (1942) (emphasis added). However, I disagree with the majority's conclusion that the evidence and reasonable inferences in this case, viewed in the light most favorable to the Commonwealth, prove those "other circumstances" sufficient to establish Dunn aided and abetted Harlow's offense of possessing marijuana and methamphetamine with the intent to distribute. I see the majority's application of the holdings in Foster and Pugliese to the facts in Dunn's case as eviscerating the distinction between "mere presence and consent," which "will not suffice" to support a conviction, Underwood, 218 Va. at 1048, 243 S.E.2d at 233, and aiding and abetting, which will.

As the majority acknowledges, Foster involved a situation in which the Court found that the defendant husband moved into a house of prostitution in which his wife already resided, with full "[knowledge] of the business going on in the house when he moved in" and a clear intent to stay indefinitely based on the quantity of clothing he had brought with him. The majority also relies on the Court's conclusions that the husband "must have known that part of his wife's proceeds [from her illegal prostitution] maintained the house," such that he "had an interest in

- 11 -

the ongoing criminal activity."  The defendant husband's moving into the house with full knowledge of the ongoing criminal enterprise supported a finding of shared criminal intent.

In Dunn's case, Harlow, who was unemployed, admitted Dunn knew he sold marijuana "frequently" and knew that he used the proceeds from those sales to support her and their child. Harlow also testified Dunn was present during those marijuana sales.  However, unlike in Foster, no evidence established that Dunn engaged in any affirmative act lending her approval to Harlow's marijuana distribution.  The evidence, rather than proving Dunn moved in with Harlow after he began to engage in the illegal activity of selling marijuana, as the defendant in Foster had done, proved merely that Dunn failed to act by not moving out or trying to make other arrangements for the support of herself and her toddler.  This failure to act, without more, is insufficient to prove Dunn shared Harlow's criminal intent.  Although the length of time Dunn remained in the residence after Harlow began selling marijuana might be a relevant factor, no evidence in the record established how long Harlow had been engaged in selling marijuana, only that he sold marijuana "frequently."  Thus, in contrast to Foster, Dunn's ongoing presence in the home and acceptance of Harlow's financial support did not prove she shared his criminal intent to distribute marijuana.

The evidence proving Dunn shared Harlow's intent to distribute the methamphetamine is similarly lacking.  Assuming for the moment the evidence was sufficient to prove Dunn was present in the room during Harlow's sale of methamphetamine to the informant on the day prior to execution of the search warrant, this record is devoid of evidence of the "other circumstances" necessary to elevate Dunn's role beyond one of "mere presence" during a *single* methamphetamine sale.  The eight-ball-sized quantity of methamphetamine found during the next day's search was secreted at the back of a drawer, making it unclear whether Dunn had any knowledge of its presence, which Harlow claimed she did not.

The majority's reliance on Pugliese is similarly unpersuasive. Pugliese involved robbery and murder, crimes against the person. 16 Va. App. at 93, 428 S.E.2d at 25. Robbery involves at least the threat of force, and murder requires actual force. Such offenses are more easily perpetrated, and with less force, if the victim perceives he will be easily overpowered, and conversely, the perpetrator's resolve is likely to be bolstered if he perceives he can successfully subdue the victim because he has a partner nearby to help if necessary. In Pugliese, the evidence established the defendant knew of the perpetrator's intent beforehand, made no effort to discourage him, accompanied him to the scene and remained present while the perpetrator committed the crimes, helped him dispose of the victim's automobile, and shared in the proceeds of the robbery. Id. at 93-94, 428 S.E.2d at 25. It was on those facts that we held,

> [w]hile mere presence at the scene of a crime or knowledge that a crime is going to be committed does not constitute aiding and abetting, accompanying a person with full knowledge that the person intends to commit a crime and doing nothing to discourage it bolsters the perpetrator's resolve, lends countenance to the perpetrator's criminal intentions, and thereby aids and abets the actual perpetrator in the commission of the crime.

Id. at 94, 428 S.E.2d at 25. In the case of a sale of illegal drugs conducted in a private residence the seller shares with the mother of his child and their toddler, the fact that the mother remains present during that sale and continues to rely on the seller for financial support following the sale simply does not establish the same sort of bolstering necessary to prove shared intent as in the case of a crime against the person.

However, even if Foster and Pugliese apply in the fashion the majority holds, the evidence, viewed in the light most favorable to the Commonwealth, does not support a finding that Dunn was aware of Harlow's sale of methamphetamine to the police informant or provide any other evidence from which the trier of fact could infer that Dunn shared Harlow's intent to distribute the eight-ball of methamphetamine found during execution of the search warrant. The

- 13 -

Commonwealth asked Detective Webb on redirect in its case-in-chief whether "anybody else [was] present *at the residence* at the time that the informant and Mr. Harlow [were] there." (Emphasis added). Detective Webb answered, "There was another male subject, Ms. Dunn – and the child . . . was present when the controlled purchase was made." Detective Webb was not asked whether he could hear anyone other than Harlow and the informant over the informant's "body mike" or whether he knew if Dunn was present *in the room* to observe the methamphetamine transaction.

Harlow testified that Dunn and the child were in another room in the house during the transaction and that Dunn came into the room only when the informant, who was a friend of Harlow's, "was on her way out the door." Although the jury was not required to find Harlow's testimony credible, its rejection of Harlow's testimony did not provide substantive evidence of Dunn's presence in the room during the transaction. Thus, this evidence established only Dunn's presence *in the residence*, which was insufficient to prove Dunn knew an eight-ball of methamphetamine was ever in the residence or that she "assented to and lent her countenance and approval to the crime" of possession of methamphetamine with intent to distribute.

As to Harlow's admission to Detective Webb that Dunn was present during the controlled purchase, the evidence surrounding Harlow's statement to Webb was admitted on rebuttal for impeachment purposes, not to prove the truth of the matter asserted, and the jury was so instructed. Thus, Harlow's admission to Webb did not constitute proof that Dunn was present *in the room* during the methamphetamine transaction with the informant. Similarly, Detective Webb's testimony surrounding Harlow's making of that statement was evidence only of the

- 14 -

context in which Harlow made that statement and was not evidence that what Webb testified he said to Harlow was true.[11]

The majority relies on Harlow's statement that Dunn used pinches of methamphetamine he sold in order to support her own habit. Again, however, the evidence in the record fails to prove Dunn knew Harlow had sold methamphetamine on any occasion or that he possessed it in a quantity inconsistent with personal use. Harlow admitted he "sold meth[amphetamine] to pinch off a chunk and . . . support [his] habit," although he claimed to have done it "just that one time," presumably meaning when he sold it to the informant. Harlow also admitted that if Dunn "knew about" "[t]he pinch of methamphetamine that [he] would take off" a larger quantity he had bought, Dunn would use the methamphetamine with him. Harlow never testified, however, that Dunn herself took pinches from the eight-balls or knew he had ever purchased methamphetamine in eight-ball quantities. Instead, he responded affirmatively to the questions, "On . . . the occasion[s] that [Dunn] [used methamphetamine], she did it based off of the eight-balls that you had, and pinches off of that, correct?" and "[Y]ou . . . and she[] would smoke the methamphetamine that *you* pinched off . . . [,] correct?" (Emphasis added). This testimony does not establish that Dunn knew Harlow was distributing methamphetamine, only that she knew he sometimes had quantities of methamphetamine consistent with personal use, which he could have purchased for personal use with the proceeds from his marijuana sales.

---

[11] On rebuttal, Detective Webb testified he told Harlow, "I could hear Ms. Dunn, on the wire, with you when the [controlled] purchase was made," "So you can't tell me that she doesn't know anything about it, or wasn't at least involved in it somehow." However, Detective Webb was not asked whether what he said to Harlow was true, and Detective Webb never testified that he heard Dunn on the wire, only that he *told* Harlow that he did. Cf. Arthur v. Commonwealth, 24 Va. App. 102, 106, 480 S.E.2d 749, 751 (1997) ("Virginia appellate courts consistently have held that a lie by a law enforcement officer 'does not, in and of itself, require a finding that a resulting confession was involuntary.'" (quoting Rodgers v. Commonwealth, 227 Va. 605, 616, 318 S.E.2d 298, 304 (1984)). This factual distinction is of great legal significance in this case.

Finally, as the evidence makes clear, Dunn's statement that "she knew that 'dope' was in the residence and that it was being sold" does not permit a finding that she was admitting her knowledge of the presence of methamphetamine being offered for sale. As Detective Webb admitted, "dope" "in my world," in narcotics "lingo," "[g]enerally" or "most common[ly]" means methamphetamine, but "people also refer to . . . marijuana, or . . . LSD, or . . . any . . . of it [as] 'dope.'" Thus, more than one reasonable inference flows from Dunn's statement, and one of those reasonable inferences is consistent with Dunn's innocence on the charge of possessing methamphetamine with an intent to distribute. See, e.g., Corbett, 210 Va. at 307, 171 S.E.2d at 253 ("[W]here a fact is equally susceptible of two interpretations one of which is consistent with the innocence of the accused, [the trier of fact] cannot arbitrarily adopt that interpretation which incriminates [the accused].").

The majority's recitation of the facts implies that during execution of the search warrant, Detective Webb retrieved marijuana, methamphetamine, and various devices for their use and sale from the living room and bathroom *in Dunn's view*, and it draws the inference that Dunn must have been referring to methamphetamine when she said "she knew that 'dope' . . . was being sold" from the residence. However, the record fails to establish when Dunn made this statement in relation to when the various items were found in the residence,[12] and it also fails to establish that Dunn saw any of the items related to methamphetamine or its distribution during execution of the warrant. Although both Harlow and Dunn possessed methamphetamine for personal use, the only items in plain view in the residence were associated with marijuana use and distribution. Police retrieved "rolling papers, a pair of silver postal scales" and a marijuana

---

[12] Detective Webb testified only that Dunn made the statement about "dope" when he spoke to her "briefly at the residence" at some time after he advised her of her "Miranda warnings." He did not indicate with any more specificity when or where this conversation took place.

smoking device in plain view on an end table in the living room that was located beside where Dunn was sitting. In a drawer in an end table across from the couch on which Dunn was sitting, police found a "larger baggy" containing three-quarters of an ounce of marijuana and a smaller baggy of marijuana, as well. The eight-ball of methamphetamine was in "a corner of a sandwich baggie," located next to a deck of cards in the "back" of the drawer. No evidence established Dunn saw or heard anything to indicate the officers had retrieved an eight-ball of methamphetamine from that drawer. Thus, none of the additional evidence supported a finding that Dunn meant for her statement regarding "dope" being sold out of the house to refer to methamphetamine rather than marijuana.

In short, the evidence, viewed in the light most favorable to the Commonwealth, supported a finding that Dunn was a user of marijuana and methamphetamine, but it failed to support a finding either that she possessed any of the marijuana or methamphetamine in the residence with an intent to distribute it or that she was a principal in the second degree to Harlow's offenses of possession with intent to distribute.

For these reasons, I would find the evidence insufficient to convict Dunn for possession of these substances with an intent to distribute, but because the elements of the lesser-included offenses of possession of marijuana and possession of methamphetamine were proved in the trial court, I would remand solely for a new sentencing proceeding for those offenses. See Commonwealth v. South, 272 Va. 1, 630 S.E.2d 318 (2006); Wright v. Commonwealth, 49 Va. App. 312, 321, 641 S.E.2d 119, 123 (2007).