## Norfolk

## ALPHONSO ALBERT

## v.

## COMMONWEALTH OF VIRGINIA

No. 0184-85

Decided August 19, 1986

COUNSEL

William P. Robinson, Jr. (Robinson, Eichler, Zaleski & Mason, on brief), for appellant.

John H. McLees, jr., Assistant Attorney General (Gerald L. Baliles, Attorney General, on brief), for appellee.

OPINION

**HODGES, J.**—While Alphonso Albert was being arrested on unrelated charges, drugs and drug paraphernalia spilled from a

briefcase kicked over by one of the arresting officers. Based on the seizure of the contraband, Albert was indicted for possession of cocaine with the intent to distribute. After the Commonwealth rested its case, the trial court granted the defendant's motion to strike the evidence as to possession with intent to distribute and the jury found Albert guilty of possession of cocaine. In this appeal, Albert contends that the court erred in refusing to suppress the seized evidence, that the evidence at trial was insufficient to sustain his conviction of possession of cocaine and that the court erred in failing to grant a mistrial because of prejudicial remarks made by the prosecutor in his opening statement. He further argues that even if he was not entitled to a mistrial as a matter of right, the trial court erred in not permitting him to voir dire the jury to determine the effect of the prosecutor's statement. We find the court did not err and affirm.

The evidence shows that, acting on information received from a reliable informant, Investigator V. M. Boykin of the Norfolk Police Department and two fellow officers went to a Norfolk address to arrest Albert on a capias for failing to appear in the circuit court on a felony charge. A young boy answered the officers' knock on the door and, when their purpose was stated, pointed to the room where Albert was found. The officers were aware that Albert had previously been convicted of manslaughter and malicious wounding. Two of them wore bullet proof vests and one was armed with a shotgun. When they entered the room they found Albert in bed asleep in the nude. With their weapons drawn, the officers ordered Albert to bring his hands out slowly where they could see them. A cursory search of the bed was made for weapons and, while doing so, Investigator Boykin observed an attache case close enough to the bed that Albert could reach it. The case was open and covered by a book or magazine. Boykin kicked it over to make sure there were no weapons inside. Some of the contents spilled out, but he paid little attention to them at that time.

Albert was then ordered out of the bed. He was handed some of his clothes and permitted, under supervision, to go to the bathroom where he dressed. When Albert returned to the bedroom, Boykin noticed him stare at the briefcase. Without touching the case, Boykin observed what he believed to be drugs and drug paraphernalia. He had been a narcotics investigator for six years. The briefcase and contents were seized. In the case, the officers found

Albert's wallet, prescription medicine bearing his name, glassine envelopes, a strainer, a measuring spoon and white powder. At the time of his arrest, Albert requested the return of his identification card found in the bag. Subsequently, a white substance found in one of the glassine envelopes tested positively as cocaine and Albert was indicted for possession of cocaine with intent to distribute.

Upon the conclusion of the Commonwealth's evidence, the court granted Albert's motion to strike the evidence as to possession of cocaine with intent to distribute and submitted the matter to the jury on the lesser offense of possession of cocaine. Albert presented no evidence. The jury found him guilty and fixed his punishment at confinement in the state penitentiary for five years.

I.

Albert moved to suppress the evidence seized from the attache case at the time of his arrest. At the suppression hearing Albert testified that his hands were visible when the officers entered his bedroom; that the briefcase was positioned about three feet from the bed, was closed and latched; that he was permitted to go to the bathroom and the briefcase was first opened by the police when he returned to the bedroom; and that it was impossible for the briefcase to fall open in the manner described by the police officer.

Investigator Boykin testified that when he entered the bedroom Albert was covered and he ordered him to bring his hands from under the covers where they could be seen; that the attache case was in an open position covered by a book or magazine; that the attache case was right up against the bed; and that its contents were first divulged when he kicked it over to determine if it contained any weapons.

Albert called for the production of the briefcase and Investigator Boykin demonstrated how the bag was positioned and how the contents spilled when it was kicked.

The court found that the briefcase was in close proximity of the accused and could have contained a weapon. The court further found that the contents that spilled as a result of the kicking were in plain view and admissible into evidence.

> The measure of the burden of proof with respect to factual questions underlying the admissibility of evidence is proof by a preponderance of the evidence . . . . In determining whether the Commonwealth has met its burden, the trial court, acting as a fact finder, must evaluate the credibility of the witnesses, resolve the conflicts in their testimony and weigh the evidence as a whole. Its factual finding "is to be given the same weight by the appellate court as is accorded the finding of fact by a jury."

*Witt* v. *Commonwealth*, 215 Va. 670, 674, 212 S.E.2d 293, 296-97 (1975) (citation omitted).

Albert concedes that the general rule is that when a person is placed under lawful arrest, the area subject to his immediate control is subject to a lawful search. *Chimel* v. *California*, 395 U.S. 752 (1969). Albert argues, however, that at the time of the seizure of the drugs he was being held at gun point by three police officers. Since he was not a potential danger to the officers, the briefcase was effectively under their dominion and control and, therefore, no search or seizure was justified. He relies on *United States* v. *Chadwick*, 433 U.S. 1 (1977).

*Chadwick* is distinguishable from this case. In *Chadwick*, drug enforcement agents in San Diego observed talcum powder spilling from a footlocker at a railroad station. The agents suspected that the locker contained drugs because they knew that powder of that type was used to mask the odor of marijuana and other drugs. This information was communicated to authorities in Boston which was the footlocker's destination. The agents in Boston observed Chadwick and two companions load the locker into Chadwick's automobile. Both the automobile and the footlocker were seized at the time of Chadwick's arrest and taken to the Federal Building. One and one-half hours after the arrest the agents searched the footlocker. Approximately two hundred pounds of marijuana was found. The Court held the search to be invalid because the drug agent had gained exclusive control of the locker and the accused was securely in custody. *Id.* at 15. The Court concluded that the search was not incidental to an arrest nor was it justified by any other exigency. *Id.*

In the present case, however, we have a search made contemporaneously with Albert's arrest. The trial court found that there

was a potential danger to the police, that the briefcase could have contained weapons and was properly kicked over to make that determination.

■ In *New York* v. *Belton*, 453 U.S. 454 (1981), the Supreme Court rejected the argument that property seized incident to a lawful arrest cannot be subjected to a warrantless search because it is in the exclusive control of the police. The court said:

"[U]nder this fallacious theory no search or seizure incident to a lawful custodial arrest would ever be valid; by seizing an article even on the arrestee's person, an officer may be said to have reduced that article to his 'exclusive control.' "

*Id.* at 461-62 n.5.

The Fourth Circuit in *United States* v. *Silva*, 745 F.2d 840 (4th Cir. 1984), *cert. denied*, 105 S. Ct. 1404 (1985), relying on *Belton*, upheld the validity of a search in a motel room of a locked zipped bag in the possession of an accused whose hands were cuffed behind his back and who was held at gun point. *Id.* at 847.

We hold that the search conducted by the officers incident to Albert's arrest was proper and that the trial court did not err in denying the motion to suppress.

## II.

The Commonwealth's Attorney, in his opening statement, told the jury: "[W]here the Commonwealth comes here, I come here as the Commonwealth and say we believe Mr. Albert is a drug dealer and we believe . . . ." Albert objected and moved for a mistrial on the ground that the statement was so prejudicial that it could not be corrected by an instruction from the court to the jury to disregard counsel's statement.

The trial judge sustained the objection to the prosecutor's expression of opinion but denied the motion for a mistrial. Albert then moved that the jury be examined to determine "what effect, if any, the comments have had." This motion was likewise denied and the court proceeded to give the jury a curative instruction as follows:

Members of the jury, you are instructed not to consider and to completely disregard the last statements made by the Commonwealth's Attorney in his opening statement regarding his opinion or the opinion of the Commonwealth concerning the defendant. You are not to consider that. You are to decide this case based solely on—to make your decision in this case solely upon the evidence which is presented to you here in court today, and, of course, upon the instructions of law which will be given to you by the Court, and after consideration of the closing arguments of the attorneys, but you are not to be influenced in any way by any statement made by the Commonwealth's Attorney as to his opinion or as to the Commonwealth's opinion. You are interested in the facts. The facts are to be revealed to you by the evidence.

You may now proceed with the remainder of your opening statement.

■ Error arising from an improper statement of counsel can usually be cured by the prompt and decisive action of the trial judge without the necessity of granting a mistrial. *Black* v. *Commonwealth*, 223 Va. 277, 286, 288 S.E.2d 449, 454 (1982).

On this issue, we agree with the Supreme Court of Virginia in *Saunders* v. *Commonwealth*, 218 Va. 294, 237 S.E.2d 150 (1977), when it said:

The rule in Virginia is well established that a judgment will not be reversed for the admission of evidence or for a statement of counsel which the court afterwards directs the jury to disregard unless there is a manifest probability that the evidence or statement has been prejudicial to the adverse party. A different rule would result in fixing an intolerable handicap upon the *nisi prius* court. Conversely, as an exception to the rule, if the prejudicial effect of the impropriety cannot be removed by the instructions of the trial court, the defendant is entitled to a new trial.

But whether the conduct was prejudicial is basically a question of fact to be determined in light of all the circumstances in each particular case.

*Id.* at 303, 237 S.E.2d at 156 (1977) (citations omitted).

In this instance, the trial court quickly admonished the jury to disregard the objectionable statement made by the prosecutor. The issue of the accused being a "drug dealer" was resolved by the trial judge when he granted Albert's motion to strike the evidence as to the charge of possession of cocaine with the intent to distribute and proceeded with trial on the lesser charge of possession of cocaine. We cannot say as a matter of law that the trial court's action was wrong.

Neither can we say that the trial court erred in refusing to voir dire the jury to determine what effect, if any, the prosecutor's statement had upon them. To have done so might have exaggerated the significance of the statement in their minds. "Unless the record shows to the contrary, it is to be presumed that the jury followed an explicit cautionary instruction promptly given." *Lavasseur* v. *Commonwealth*, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983); *Stotler* v. *Commonwealth*, 2 Va. App. 481, 484, 346 S.E.2d 39, 41 (1986). We find nothing in the record to suggest that the trial court abused its discretion in refusing to examine the jury.

### III.

Lastly, Albert contends that the evidence was insufficient to sustain a conviction for possession of cocaine. He argues that the evidence fails to show that he had knowledge of the presence of the cocaine or that he possessed it intentionally. He says that because it was not his apartment other people had equal access to the attache case. He also relies on the fact that a telephone bill to his grandmother was found in the bag.

To convict a defendant of possession of illegal drugs, the Commonwealth must prove that the defendant was aware of the presence and character of the drugs, and that he intentionally and consciously possessed them. Constructive possession may be established by showing that an accused had dominion or control over the drugs. *Andrews* v. *Commonwealth*, 216 Va. 179, 182, 217 S.E.2d 812, 814 (1975). In reviewing the sufficiency of the evidence on appeal, it must be viewed in the light most favorable to the Commonwealth, and given all reasonable inferences fairly deducible therefrom. *Higginbotham* v. *Commonwealth*, 216 Va. 349,

352, 218 S.E.2d 534, 537 (1975). The inferences to be drawn from the facts are solely within the province of the jury, *Comer v. Commonwealth*, 211 Va. 246, 249, 176 S.E.2d 432, 434 (1970), and the jury's verdict will not be disturbed on appeal unless it is plainly wrong or without evidence to support it. *Stockton v. Commonwealth*, 227 Va. 124, 145, 314 S.E.2d 371, 385, *cert. denied*, 105 S. Ct. 229 (1984); Code § 8.01-860.

We disagree with Albert's contentions. The proximity of the briefcase to the bed in which he was sleeping, the fact that his wallet, identification papers and a bottle of prescribed medicine bearing his name were in the bag, and his staring at the bag when he left the bedroom and re-entered it are all factors that would have been properly considered by the jury in determining Albert's guilt or innocence. We hold that there was sufficient evidence to support the jury's finding of guilt.

For the reasons stated herein, the judgment of the trial court is affirmed.

*Affirmed.*

Keenan, J., and Benton, J., concurred.