COLEMAN, Judge.
Dyward J. Gregory was convicted in a bench trial of possession of cocaine with intent to distribute, a second or subsequent offense, in violation of Code § 18.2-248(C). Gregory contends that the trial court erred by denying his motion to suppress the evidence seized from him and that the evidence is insufficient to prove he intended to distribute cocaine. We hold that the trial court did not err and affirm the defendant’s conviction.
At approximately 1:56 a.m. on April 9, 1994, Officer Ronald McClaren, Jr. received a radio dispatch that an anonymous caller reported that an individual “was standing out in the roadway [at the 1700 block of Carlyle Avenue in Richmond] flagging motorists down to ask them if they wanted to buy drugs.” The caller described the individual as a black male wearing a green sweat jacket with a green hooded jacket underneath, a pair of dark jeans, and tennis shoes. The caller also provided information about the color, make, and “other identifying characteristics” of the automobile from which “the individual was supposedly dealing in drugs.”
About two minutes after receiving the dispatch, Officer McClaren approached the 1700 block of Carlyle Avenue. He observed the defendant in a vehicle matching the description given by the anonymous tipster. The defendant was dressed in the manner described by the caller.
As McClaren approached the defendant’s vehicle, the defendant looked in McClaren’s direction and began to walk away from the vehicle. He proceeded down Carlyle Avenue and looked over his shoulder toward McClaren as he walked. Officer McClaren drove his patrol car beside the defendant and stopped. Because McClaren could not see one of the defendant’s hands, McClaren told the defendant to show the other hand. The defendant did not show both hands until McClaren exited his patrol car and drew his weapon. After *105 the defendant showed both hands, McClaren reholstered his weapon.
McClaren explained to the defendant that he was responding to a call that an individual was seen selling drugs and that he was going to check to determine whether the defendant had outstanding arrest warrants. McClaren informed the defendant that he would be free to go if there were no problems. The defendant replied, “it’s not me. It wasn’t me.” McClaren then conducted a pat-down search of the defendant and felt objects, including a hard object, in the defendant’s pocket. When McClaren asked the defendant what was in the pocket, he replied, “[pjlease mister, please don’t put anything in my pocket.” McClaren asked the defendant again what was in the pocket and the defendant replied, “I don’t know.” McClaren then asked the defendant if he had “permission to go into [the defendant’s] pocket,” and the defendant replied, “[s]ure, you do.” McClaren found seven individual bags of crack cocaine in the defendant’s pocket.
Based on the foregoing evidence, the trial court overruled the defendant’s motion to suppress the cocaine.
At trial, McClaren testified that he had recovered seven baggies containing 3.4 grams of cocaine from the defendant and that the packaging and quantity of the cocaine were consistent with distribution. The trial court found the defendant guilty of possession of cocaine with intent to distribute, a second or subsequent conviction.
A police officer may lawfully stop and frisk an individual if the officer possesses a reasonable suspicion, based on articulable facts, that the individual is or is about to be engaged in criminal activity. Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884-85, 20 L.Ed.2d 889 (1968). The standard for conducting such a detention is less than probable cause, but more than an “inchoate and unparticularized suspicion or ‘hunch.’ ” Moss v. Commonwealth, 7 Va.App. 305, 308, 373 S.E.2d 170, 172 (1988) (quoting Terry, 392 U.S. at 27, 88 S.Ct. at 1883). “Once the police officer has properly detained a suspect for questioning, he may conduct a limited pat-down *106 search of the suspect’s outer clothing to search for weapons if the officer reasonably believes, based on specific and articulable facts, that the suspect might be armed and dangerous.” Phillips v. Commonwealth, 17 Va.App. 27, 30, 434 S.E.2d 918, 920 (1993).
In considering whether facts based on an anonymous tip are sufficient to provide a police officer a reason to suspect criminal activity, the United States Supreme Court has stated that “anonymous [information that has] been sufficiently corroborated [may] furnish reasonable suspicion ... [justifying an] investigative stop.” Alabama v. White, 496 U.S. 325, 331, 110 S.Ct. 2412, 2416-17, 110 L.Ed.2d 301 (1990). Applying Alabama v. White, we have held that although the police do not have to verify every detail provided by an anonymous tipster, “[significant aspects of the informer’s information must be independently corroborated.” Bulatko v. Commonwealth, 16 Va.App. 135, 137, 428 S.E.2d 306, 307 (1993). See also Johnson v. Commonwealth, 20 Va.App. 49, 54, 455 S.E.2d 261, 264 (1995) (holding that Terry stop was valid because known rehable “informants provided detailed, predictive information that the officers were able to corroborate”).
Here, the tipster provided a detailed description of the individual, the car, the location, and the nature of the illegal activity in which the individual was engaged. Although Officer McClaren did not observe the defendant engaged in illegal activity, McClaren verified certain details of what the tipster observed within moments after receiving the detailed account. McClaren verified that the defendant matched the physical description, wore clothes, and occupied a vehicle matching the description given by the tipster.
Admittedly, the facts as related by the caller could have been “easily obtained” by a casual observer. Alabama v. White, 496 U.S. at 332, 110 S.Ct. at 2417; see Hardy v. Commonwealth, 11 Va.App. 433, 436, 399 S.E.2d 27, 29 (1990) (holding that verification of “innocent” behavior is not sufficient to establish probable cause). In that vein, the Supreme Court noted in Alabama v. White that in evaluating the *107 informer’s reliability that “the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.” Alabama v. White, 496 U.S. at 332, 110 S.Ct. at 2417 (quoting Illinois v. Gates, 462 U.S. 213, 245, 103 S.Ct. 2317, 2335-36, 76 L.Ed.2d 527 (1983)). The Court noted, however, that reasonable suspicion depends upon “the content of information possessed by [the] police” as well as its reliability. Id. at 330, 110 S.Ct. at 2416. Accordingly, a detailed description, like that given here, by a caller who appears to have been a concerned citizen who recently observed a person hailing motorists to sell drugs, together with immediate verification of aspects of the description are important factors to consider in determining whether the officer had reasonable suspicion, even when the description contains facts that are “easily obtained.” See Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).
This Court has held that Alabama v. White does not pre- ' elude a finding of reasonable suspicion when the anonymous tipster does “not provid[e] the government with information that predicts the future actions of the [defendant], if some other indicia of reliability of the informant exists.” Beckner v. Commonwealth, 15 Va.App. 533, 535, 425 S.E.2d 530, 531 (1993).
It is well established that whether reasonable suspicion “exists to warrant an investigatory stop is determined by the totality of the circumstances.” Smith v. Commonwealth, 12 Va.App. 1100, 1103, 407 S.E.2d 49, 51 (1991).
The circumstances we may consider include “the ‘characteristics of the area’ where the stop occurs, the time of the stop, whether late at night or not, as well as any suspicious conduct of the person accosted such as an obvious attempt to avoid officers or any nervous conduct on the discovery of their presence.”
Id. at 1103, 407 S.E.2d at 51-52 (quoting Williams v. Commonwealth, 4 Va.App. 53, 67, 354 S.E.2d 79, 87 (1987) (quoting *108 United States v. Bull, 565 F.2d 869, 870-71 (4th Cir.1977), cert. denied, 435 U.S. 946, 98 S.Ct. 1531, 55 L.Ed.2d 545 (1978))). These circumstances are also relevant in determining the reliability of an anonymous informant.
In the present case, Officer McClaren found the defendant alone around 2:00 a.m. McClaren testified that “we always receive complaints of drug dealing in the area of [the 1700 block of] Carlyle Avenue.” He also observed further suspicious behavior by the defendant. McClaren testified that “when [the defendant] looked in my direction and saw me he immediately began walking away from the vehicle and began walking down Carlyle Avenue.” The defendant walked away from McClaren and looked over his shoulder. When McClaren pulled his patrol car along side the defendant and said, “good morning,” the defendant replied, “what,” and according to McClaren, seemed “slightly agitated.” The defendant had one of his hands slightly behind his back, and McClaren commanded him to “[s]how me the other hand.” The defendant refused to show his hands until McClaren exited his patrol car and drew his weapon.
In Smith v. Commonwealth, the police officer saw Smith shortly after 10:00 p.m. on a playground that had a reputation as a place where drugs were prevalent. When Smith looked in the officer’s direction, Smith suddenly placed something in his front pants pocket. We held that the officer’s observations were insufficient to warrant an investigatory stop. Smith, 12 Va.App. at 1104, 407 S.E.2d at 52; see also Goodwin v. Commonwealth, 11 Va.App. 363, 367, 398 S.E.2d 690, 692 (1990); Moss, 7 Va.App. at 308, 373 S.E.2d at 172.
In the present case, however, Officer McClaren observed the defendant at 2:00 a.m., in a known drug area, walking away from a car he had previously occupied. As he walked away, he looked over his shoulder repeatedly at Officer McClaren. Although McClaren did not observe the defendant flagging down cars or engaging in other activity consistent with drug distribution, the fact that the defendant exited his car and acted nervously upon noticing the police tends to add *109 credence to the officer’s suspicion that the defendant was the person the tipster had described as flagging down vehicles and offering to sell the occupants drugs. The defendant’s behavior thus tended to support the informer’s report. Based upon the details of the informer’s tip concerning the defendant’s conduct in hailing motorists offering to sell drugs, the detailed description of the defendant, and Officer McClaren’s independent observations and partial verification, McClaren had reason to suspect that the defendant was engaged in selling drugs. See Draper, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. Therefore, when McClaren stopped the defendant he had reason to detain the defendant temporarily in order to inquire about his activities and to investigate whether defendant was engaged in criminal activity.
Officer McClaren stated during cross-examination that he requested and was granted permission to search the defendant’s pockets. The trial court found that the defendant granted “clear permission ... for entry into [his] pockets.” “The test of a valid consent search is whether it was ‘freely and voluntarily given.’ ” Deer v. Commonwealth, 17 Va.App. 730, 734, 441 S.E.2d 33, 36 (1994) (quoting Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791-92, 20 L.Ed.2d 797 (1968)). The Commonwealth must demonstrate that the consent was not the product of duress, and “[t]he question of whether a particular ‘consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.’ ” Id. at 735, 441 S.E.2d at 36 (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047-48, 36 L.Ed.2d 854 (1973)).
Here, Officer McClaren conducted a valid Terry stop. Although he drew his weapon when the defendant did not show both hands, he reholstered the gun before asking for permission to search the defendant’s pockets. McClaren informed the defendant that he was investigating a report of drug dealing and that the defendant would be free to go if there were no problems. On these facts, the trial court’s *110 finding that the defendant voluntarily consented to the search of his pockets was not “clearly erroneous.” Limonja v. Commonwealth, 8 Va.App. 532, 540, 383 S.E.2d 476, 481 (1989) (en banc), cert. denied, 495 U.S. 905, 110 S.Ct. 1925, 109 L.Ed.2d 288 (1990).
The defendant also contends that the evidence was insufficient to prove that he intended to distribute the cocaine seized from him. On appeal, the evidence is “viewed in the light most favorable to the Commonwealth, and given all reasonable inferences fairly deducible therefrom.” Albert v. Commonwealth, 2 Va.App. 734, 741-42, 347 S.E.2d 534, 538 (1986). This Court will not disturb the trial judge’s verdict “unless it is plainly wrong or without evidence to support it.” Id. at 742, 347 S.E.2d at 538-39.
“When the proof of intent to distribute narcotics rests upon circumstantial evidence, the quantity which the defendant possesses may indicate the purpose for which it is possessed. Possession of a quantity greater than that ordinarily possessed for one’s personal use may be sufficient to establish an intent to distribute it.” Iglesias v. Commonwealth, 7 Va.App. 93, 110, 372 S.E.2d 170, 180 (1988) (en banc) (citations omitted). At trial, Officer McClaren testified that, based upon his training and experience, he believed that possession of 3.4 grams of cocaine was consistent with distribution, not personal use. Moreover, McClaren also testified that the method of packaging of the cocaine seized from the defendant was consistent with distribution. See Early v. Commonwealth, 10 Va.App. 219, 222, 391 S.E.2d 340, 341-42 (1990). Although Officer McClaren testified on cross-examination that it was conceivable that an individual with “a serious addiction” could consume around three grams of cocaine in two days, we hold that his testimony, viewed in the light most favorable to the Commonwealth, was sufficient to prove intent to distribute.
In addition to testifying that the amount of cocaine seized and the method of packaging were consistent with distribution, McClaren also testified that the tipster reported *111 that an individual was “standing in the street waving down motorists [and] asking them if they wanted to purchase drugs.” Although the tipster’s statement was inadmissible hearsay, see Arnold v. Commonwealth, 4 Va.App. 275, 279-80, 356 S.E.2d 847, 850 (1987), the defendant failed to object to the statement at the time it was offered into evidence. See Burns v. Board of Supervisors, 227 Va. 354, 363, 315 S.E.2d 856, 862 (1984) (holding that failure to object to the admission of the statement constitutes a waiver of the hearsay objection). Therefore, the statement was properly before the trial court and was relevant to prove the defendant’s guilt.
Because the anonymous tip was sufficiently corroborated, Officer McClaren had reasonable suspicion to conduct a Terry investigatory stop. The seizure of the cocaine was valid because the defendant voluntarily consented to the search of his pockets. Therefore, the trial court did not err by overruling the defendant’s motion to suppress the cocaine. Moreover, the evidence was sufficient to prove that the defendant intended to distribute the cocaine seized from him. Accordingly, we affirm the defendant’s conviction.

Affirmed.