UPON REHEARING EN BANC
McCLANAHAN, Judge.
A jury convicted Jami Dawn Dunn of possession of methamphetamine with the intent to distribute as a principal in the second degree and possession of marijuana with the intent to *614 distribute as a principal in the second degree. Dunn contends on appeal the evidence was insufficient to support her convictions. A panel majority of this Court agreed with Dunn and reversed the judgment of the trial court. We granted a petition for rehearing en banc and stayed the mandate of the panel decision. Upon rehearing en banc, we affirm the trial court.
I. Backgkound
On appeal, we review the evidence in the “light most favorable” to the Commonwealth. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (citation omitted). That principle requires us to “ ‘discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.’ ” Kelly v. Commonwealth, 41 Va.App. 250, 254, 584 S.E.2d 444, 446 (2003) (en banc) (quoting Watkins v. Commonwealth, 26 Va.App. 335, 348, 494 S.E.2d 859, 866 (1998)). See also Bolden v. Commonwealth, 275 Va. 144, 147-48, 654 S.E.2d 584, 586 (2008); Molina v. Commonwealth, 272 Va. 666, 671, 636 S.E.2d 470, 473 (2006); Viney v. Commonwealth, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005); Walton v. Commonwealth, 255 Va. 422, 425-26, 497 S.E.2d 869, 871 (1998).
So viewed, an informant for the Waynesboro Police Department made a controlled purchase[1] of methamphetamine from Christopher Harlow in the residence he shared with his fiancée, Jami Dawn Dunn, and their three-year-old son. At the time of the drug purchase, Detective John Webb was located within close range and listening in on the wire being worn by the informant. The informant paid $225 for an eighth of an ounce of methamphetamine, also referred to as an “eight-ball.” Dunn and the child were present at the residence during the transaction.
*615 On the following day, police executed a narcotics search warrant to search Dunn’s and Harlow’s residence. When the search warrant was executed, Dunn, Harlow, and their son were sitting in the living room. On an end table next to the sofa on which Dunn and her son were seated, police found rolling papers, silver postal scales, and a glass-smoking device containing marijuana residue. In the top drawer of another end table located opposite the sofa on which Dunn was seated, police found two bags of marijuana and a bag containing methamphetamine. According to Detective Webb, the quantities of marijuana and methamphetamine in two of the bags were not consistent with personal use.[2] The amount of marijuana in one of the bags measured 23.5 grams and the amount of methamphetamine was a little less than an eight-ball. The contents of an additional bag of marijuana were consistent with personal use. Below the top drawer of the same table in an area open from the front, police found multiple plastic bags used for packaging drugs, a plastic bag containing partially burned marijuana cigarettes, several smoking devices, a lighter, knife, and screens associated with smoking drugs that contained marijuana residue. In a blue drawstring bag located in the same area, police found more drug paraphernalia including a sunglasses case containing a spoon for scraping out methamphetamine to smoke, screens and glass devices for smoking methamphetamine containing residue, and a “one-hitter” used for smoking marijuana. The police also found in the kitchen sink a water bong for smoking marijuana.
In a drawer underneath the sink in the downstairs bathroom, police found aluminum foil and a straw used for smoking methamphetamine. Police also discovered a plastic bag with the corner cut out which, as Detective Webb testified, is *616 typical for packaging drugs for sale. In Dunn’s manicure kit, police found a plastic bag corner containing .2 gram of methamphetamine (an amount consistent with personal use), scissors used for cutting plastic bag corners, and a twist-tie, also associated with packaging drugs for sale.
Detective Webb testified that as he retrieved these items she said nothing. While he was at Dunn’s residence, she admitted she knew that “dope” was in the residence and that it was being sold. Webb testified that most people who use the term “dope” are referring to methamphetamine but that term may also be used to refer to marijuana and other drugs. After her arrest, Dunn told Webb she only knew about the marijuana sales and was referring only to marijuana when she told him “dope” was being sold in the home.
When Harlow was questioned by Webb, he admitted to possessing and selling both marijuana and methamphetamine. Harlow also told Webb he intended to sell the methamphetamine found in the plastic bag but had pinched off some for his own use which is why the amount found in the plastic bag was slightly less than an eighth of an ounce. Harlow initially told Webb that Dunn did not know about the drug sales. Harlow later told Webb Dunn only knew of and was present in the residence during the marijuana sales and did not know methamphetamine was in the residence. However, when Webb pointed out to Harlow that Dunn was present during the controlled purchase of methamphetamine, Harlow conceded Dunn’s knowledge and presence.[3]
During Dunn’s trial, Harlow admitted Dunn was in the residence at the time of the controlled purchase but maintained Dunn was unaware that methamphetamine was in the residence or that it was being sold.[4] He also testified that *617 neither he nor Dunn were employed and he sold the marijuana to produce income for their living expenses. In fact, he testified he had no other means to make money for his family and that both he and Dunn used the money he made to support themselves noting he didn’t “believe that any woman should have to work as long as they have a man willing to take care of them.” Harlow also admitted he was an habitual user of methamphetamine, that Dunn had also acquired a methamphetamine habit, and both used pinches from the methamphetamine he sold to support their habits.[5]
II. Analysis
Dunn contends on appeal the evidence was insufficient to support her convictions of possession with intent to distribute as a principal in the second degree. We disagree.
To hold Dunn accountable as a principal in the second degree, the Commonwealth was required to show that Dunn was present, aiding and abetting Harlow. McGill v. Commonwealth, 24 Va.App. 728, 733, 485 S.E.2d 173, 175 (1997).
A principal in the second degree is one not the perpetrator, but present, aiding and abetting the act done, or keeping watch or guard at some convenient distance. * * * Every person who is present at the commission of a [crime], encouraging or inciting the same by words, gestures, looks, or signs, or who in any way, or by any means, countenances or approves the same is, in law, assumed to be an aider and abettor, and is liable as principal.
*618 Foster v. Commonwealth, 179 Va. 96, 99, 18 S.E.2d 314, 315-16 (1942) (internal quotation marks and citation omitted); see also Pugliese v. Commonwealth, 16 Va.App. 82, 428 S.E.2d 16 (1993).
On appeal, when considering a challenge to the sufficiency of the evidence, “we ‘presume the judgment of the trial court to be correct’ and reverse only if the trial court’s decision is ‘plainly wrong or without evidence to support it.’ ” Kelly, 41 Va.App. at 257, 584 S.E.2d at 447 (quoting Davis v. Commonwealth, 39 Va.App. 96, 99, 570 S.E.2d 875, 876-77 (2002)); see also McGee v. Commonwealth, 25 Va.App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc). Stated otherwise, a reviewing court does not “ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979) (emphasis in original; citation and internal quotation marks omitted). Rather, “the relevant question is whether ... any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. at 319, 99 S.Ct. at 2789 (emphasis in original). “This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.” Id. Furthermore, “[t]his Court does not substitute its judgment for that of the trier of fact.” Hunley v. Commonwealth, 30 Va.App. 556, 559, 518 S.E.2d 347, 349 (1999) (citing Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992)).
The Supreme Court of Virginia and the Court of Appeals of Virginia have recognized that one who is present at a crime and does not oppose it can be guilty of aiding and abetting if the existence of other circumstances allow the fact finder to infer that the accused assented to and lent his countenance and approval to the crime. See Foster, 179 Va. 96, 18 S.E.2d 314, and Pugliese, 16 Va.App. 82, 428 S.E.2d 16.[6] *619 For example, in Foster, where defendant’s wife was living and working in a house of prostitution and defendant moved into the house and stayed in a room adjoining his wife’s room, the Supreme Court of Virginia found the evidence sufficient to prove he was an aider and abettor of the prostitution. 179 Va. at 98-99,18 S.E.2d at 315. The Court reasoned the defendant knew of the business going on in the house when he moved in, he must have known that part of his wife’s proceeds maintained the house, and thus had an interest in the ongoing criminal activity. Id. at 100, 18 S.E.2d at 316. As the Court stated, while mere presence when the crime is committed is not sufficient to render the defendant guilty as an aider or abettor,
it is certain that proof that a person is present at the commission of a crime without disapproving or opposing it, is evidence from which, in connection with other circumstances, it is competent for the jury to infer that he assented thereto, lent to it his countenance and approval, and was thereby aiding and abetting the same.

Id.

In Pugliese, defendant argued he was merely present when the perpetrator committed robbery and murder but there was no evidence he acted in concert with the perpetrator or aided or abetted him. 16 Va.App. at 92-93, 428 S.E.2d at 24. As we noted, the defendant knew the perpetrator intended to rob or commit some crime against the victim and did nothing to discourage him. Thus, he bolstered the perpetrator’s resolve and thereby aided and abetted him. Id. at 94, 428 S.E.2d at 25. Defendant subsequently assisted in disposing of the victim’s vehicle and shared in the proceeds of the robbery. We held the evidence sufficient to support his conviction for robbery and murder in the second degree noting:
*620 When viewed in the light most favorable to the Commonwealth, and granting to it all reasonable inferences, the jury reasonably could have concluded from the facts that Pugliese knew beforehand of [the perpetrator’s] criminal intent and, because he assisted in disposing of the van and received part of the proceeds of the robbery/murder, that he shared [the perpetrator’s] criminal intention.
Id. at 94-95, 428 S.E.2d at 25.
The evidence in this case established both Dunn and Harlow possessed marijuana and methamphetamine in a home they shared with their three-year-old son. Harlow admitted his intention to sell the drugs, and Dunn was present during Harlow’s possession of the drugs with intent to distribute them, a crime to which he pled guilty. Dunn was present in the residence during the marijuana and methamphetamine drug transactions as evidenced from Harlow’s testimony and Webb’s testimony about listening on the wire. Before her arrest, Dunn told Webb that she knew “dope” in the home was being offered for sale.[7] The quantity of some of the drugs and other items found in Dunn’s home were consistent with distribution—not personal use.[8] Neither Harlow nor Dunn was employed at the time of their arrest, and they relied on the income from the sale of the marijuana to support their family.[9] *621 Further, Dunn relied on “pinches” from the methamphetamine Harlow sold to support her own drug habit.[10]
Dunn’s consent to the drug sales in her home, her reliance on the income from the marijuana sales for her livelihood, and her reliance on the pinches from the methamphetamine to support her own drag habit supplied the “other circumstances” from which the jury, as the trier of fact to whom we must defer, could infer Dunn “assented” to the possession of the drags with intent to distribute and “lent to it [her] countenance and approval, and was thereby aiding and abetting the same.” Id. at 94, 428 S.E.2d at 25 (internal quotation marks omitted).
For these reasons, we affirm the trial court’s judgment.

Affirmed.

. A controlled purchase means the informant is provided money, wired for sound, and directed to make a purchase under police supervision.

. Dunn’s possession of quantities inconsistent with personal use could have supported a conviction of possession with intent to distribute as a principal in the first degree. Gregory v. Commonwealth, 22 Va.App. 100, 110, 468 S.E.2d 117, 122 (1996) ("Possession of a quantity greater than that ordinarily possessed for one’s personal use may be sufficient to establish an intent to distribute.” (internal quotations and citation omitted)).

. The jury was instructed to consider this evidence as only bearing on Harlow's credibility. Jury Instruction No. 12.

. The trier of fact was not required to accept Harlow's testimony regarding Dunn's lack of knowledge about the methamphetamine, but instead was free to "rely on it in whole, in part, or reject it completely.” *617 Rollston v. Commonwealth, 11 Va.App. 535, 547, 399 S.E.2d 823, 830 (1991).

. At trial, Harlow made inconsistent statements about how many times he had sold methamphetamine. At one point, he testified he only sold the methamphetamine the one time during the controlled purchase to help a friend. However, he also admitted he planned to sell the methamphetamine found in the bag at his house the day after the controlled purchase. Later in his testimony, Harlow admitted he and Dunn supported their own methamphetamine habits by pinching off pieces from eight-balls he sold.

. It is Dunn’s presence during Harlow's possession with intent to distribute, not her presence at the drug sales in a particular room, that *619 makes Foster binding and Pugliese applicable. There is no question she was present in the residence during Harlow’s possession of marijuana and methamphetamine with intent to distribute. Her presence in the residence during the drug sales simply bolsters the “other circumstances” we find exist.

. Although the dissent suggests there is more than one inference that can be made from Webb's testimony about the “dope,” we view all inferences in the light most favorable to the Commonwealth. See Kelly, 41 Va.App. at 254, 584 S.E.2d at 446.

. As we noted previously, Dunn’s possession of quantities inconsistent with personal use could have supported a conviction of possession with intent to distribute as a principal in the first degree. Gregory, 22 Va.App. at 110, 468 S.E.2d at 122 ("Possession of a quantity greater than that ordinarily possessed for one's personal use may be sufficient to establish an intent to distribute.” (internal quotations and citation omitted)).

. Dunn argues there was no evidence she relied on income from drug sales. However, no member of the household was employed and they all lived on the money Harlow made from his drug sales. The jury was certainly free to make the reasonable inference that they relied on this income.

. We reject Dunn’s suggestion that the coxxxts have required some degree of connection between the "other circumstances” and the commission of the crime. Moreover, we fail to see how Dunn’s reliance on the income from the sales of marijuana and her reliance on the pinches from methamphetamine were not connected to Harlow's drug sales.