UNPUBLISHED

## COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Athey and White
Argued at Richmond, Virginia


JEFFREY ANTONIO BARLOW

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1133-22-2              JUDGE CLIFFORD L. ATHEY, JR.
                                                    JANUARY 9, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Phillip L. Hairston, Judge

Abigail L. Paules (David Whaley LLC, on briefs), for appellant.

J. Brady Hess, Assistant Attorney General (Jason S. Miyares,
Attorney General; Leanna C. Minix, Assistant Attorney General, on
brief), for appellee.


Jeffrey Antonio Barlow ("Barlow") pled guilty in the Circuit Court of the City of Richmond

("trial court") to one count of possession of heroin with intent to distribute in violation of Code

§ 18.2-248(C) and one count of failure to appear in violation of Code § 19.2-128. His guilty pleas

were expressly conditioned on the outcome of his appeal of the trial court's denial of his

suppression motion. Barlow assigns error to the trial court's determinations that: 1) there existed

reasonable articulable suspicion that Barlow was engaging in criminal activity justifying the seizure

of his person; 2) there existed a reasonable articulable suspicion that Barlow was armed and

dangerous justifying a pat-down search of his person; and 3) a strip search that violated Barlow's

Fourth Amendment rights did not occur. For the following reasons, we affirm the judgment of the

trial court.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

# I. Background

On October 3, 2019, Richmond police officers responded to an anonymous 911 call concerning drug activity and firearm possession. No information identifying the caller was either provided by the caller or transmitted to the officers by the police dispatcher. The initial computer automatic dispatch ("CAD") report transmitted to the officers by the dispatcher indicated that a male in a white Nissan sedan possessed drugs and a firearm and was currently present at a specific address in the City of Richmond. The CAD report also alleged that there were four subjects standing near the white Nissan sedan, which was parked next to the building located at the specified address. A black male wearing a white t-shirt "around his head" was also identified as being near the Nissan.

An updated CAD report indicating a "drug-armed" and "drug/narcotics offense," including a black male last seen in a white shirt who "has a gun on his hip," was received ten minutes after the initial report. The updated report indicated that the suspect's name was Jeffrey and that there was a firearm inside the white Nissan sedan.

Based on the officers' "understanding [of] how the call-taker inputs that [information] into [the police] computer," they concluded there were two black males and possibly two other individuals near a white Nissan sedan parked at the reported address. The officers further surmised that the individual with the t-shirt wrapped around his head was named Jeffrey. In addition, the officers interpreted the updated CAD report as identifying a second black man located near the Nissan and indicating that one of the individuals present there had a firearm on his hip.

Officer Levi Manns ("Officer Manns") and Officer Seth Layton ("Officer Layton") subsequently arrived at the scene in their police cruiser, in uniform, armed, and displaying their badges of authority. The white Nissan sedan was parked where indicated in the CAD report, and a no trespassing sign was posted on the wall of the building adjacent to where the Nissan was parked.

Upon law enforcement's arrival, two black males dressed in white shirts were standing near the white Nissan sedan. The officers later learned that the black male also wearing a white shirt on his head was Barlow and the second black male was James Taylor ("Taylor"). Initially, as the officers were driving toward the Nissan, the two men "immediately started walking toward[] the left . . . of the building[,] toward the backside of that building." When the officers exited their police cruiser to approach the men, they stopped, whereupon Officer Manns asked, "What's up y'all? Y'all live over here?" Officer Manns then approached Barlow while Officer Layton approached Taylor. At this point, Barlow was smoking a cigar and holding one cell phone to his ear and another cell phone in his hand.

Officer Layton observed a bulge at Taylor's waistline that he believed to be a concealed firearm. Officer Layton then asked Taylor if he possessed a firearm, which Taylor denied. Taylor then began moving his left hand toward the bulge on his waistline, and in response, Officer Layton grabbed Taylor's wrists, turned him around, conducted a pat-down search, and then found and seized a handgun concealed under the bulge. At the same time, Officer Manns seized Barlow's phone and turned him around. After Officer Manns saw Officer Layton find the firearm on Taylor, Officer Manns conducted a pat-down search of Barlow. When Officer Manns felt a bulge under Barlow's right pant leg, he asked what the item was. Barlow answered that it was marijuana, which was subsequently seized.[1] Officer Manns's body-worn camera captured these interactions.[2]

The recording shows Barlow and Taylor standing on the sidewalk as Officer Manns exits his police cruiser. Officer Manns then approaches Barlow while Officer Layton is simultaneously approaching Taylor. Officer Layton appears to be looking downward in the direction of Taylor's

---

[1] At the time of the encounter and seizure, possession of marijuana in the Commonwealth was illegal. *See* Code § 18.2-250.1 (2019).

[2] The recording was made part of the record at the hearing on Barlow's motion to suppress.

- 3 -

right hip. Officer Layton first grabs Taylor's right hand, then his left wrist, as Taylor begins moving his left hand toward his right hip. Officer Manns then seizes Barlow's cell phone (the seizure occurs out of frame), with the phone first becoming visible on the video in Officer Manns's hand. Taylor is then spun around by Officer Layton as Officer Manns also begins turning Barlow around by his wrist. Officer Manns then tells Barlow, "hey," and "chill," several times before finally directing Barlow to "spread your legs for me." Officer Layton and Taylor then briefly come back into frame with a handgun tucked into Taylor's waistband becoming visible. Officer Layton then proceeds to seize the gun from Taylor's waistband. Officer Manns also appears, visibly searching Barlow's person and discovering marijuana.

Barlow was subsequently arrested and placed in the back of a transport van. The driver of the transport van advised law enforcement that she saw Barlow "digging inside of his waistband while his hands were behind his back" and "digging in the back of his pants." As a result, officers removed Barlow from the van. Since a portion of Barlow's stomach and the top of his underwear were visible, the officers formed a line to screen Barlow from the view of bystanders while Sergeant Scarborough searched underneath the back of Barlow's pants.

Sergeant Scarborough testified that he initially intended to pull the top of Barlow's pants back to permit access to look in the rear of his pants and that his purpose in doing so was to ensure there were no weapons or dangerous substances hidden under the pants. He further testified that he did not intend to pull the pants down or otherwise remove them and expose Barlow's buttocks. He also testified that, upon looking down the back of Barlow's pants, he saw what appeared to be part of a plastic bag. Sergeant Scarborough's body camera video of this search was made part of the record and clearly shows that a significant portion of Barlow's buttocks was visible to Sergeant Scarborough when he pulled Barlow's pants and underwear away from his body. He further testified that when he attempted to seize the bag, Barlow began to struggle and attempted to grab his

pants with his cuffed hands. In the course of the ensuing struggle, which involved Barlow jumping and smacking the bag out of Scarborough's hands, officers attempted to control Barlow by placing him on the ground. However, Barlow continued to struggle, and his pants dropped lower during the struggle exposing the top of his buttocks. On cross-examination, Sergeant Scarborough agreed that Barlow's buttocks were visible before Barlow began resisting. Subsequent testing indicated the baggies retrieved from the back of Barlow's pants contained cocaine and heroin.

Barlow was subsequently indicted for possession of cocaine with intent to distribute and possession of heroin with intent to distribute, both in violation of Code § 18.2-248(C).[3] Prior to trial, Barlow moved to suppress the evidence against him, alleging that the evidence was collected in violation of his Fourth Amendment rights since there had been no reasonable articulable suspicion of criminal activity justifying either the seizure or the initial search. Barlow also contended that he had been subjected to an unconstitutional strip search when Sergeant Scarborough searched under his pants and exposed his buttocks.

The trial court held a hearing on the suppression motion before denying the motion by written order accompanied by a letter opinion. The trial court explicitly found that "[a]s Officer Layton approached . . . Taylor, he immediately noticed through . . . Taylor's t-shirt and just above his waistband, a bulge not consistent with human anatomy." "Officer Layton asked . . . Taylor if he had a firearm" and "Taylor responded 'no' and began to reach for the firearm. Upon seeing . . . Taylor reach toward his waistband, Officer Layton grabbed . . . Taylor's arm, removed the firearm from underneath his t-shirt and conducted a pat down of his person." The trial court continued, "[a]*round the same time*, Officer Manns, while observing Officer Layton's interaction with . . . Taylor, asked . . . Barlow if he had identification." (Emphasis added). "Officer Manns then

---

[3] Barlow was also charged with two counts of felony failure to appear in violation of Code § 19.2-128.

removed a cellphone from . . . Barlow's hand and placed it on the hood of the vehicle beside him. Officer Manns then began to pat down . . . Barlow. During the pat down, Officer Manns felt a bulge inside of . . . Barlow's pants and asked . . . Barlow what was on his person," to which "Barlow responded[,] 'weed.'"

The trial court concluded that Barlow was seized when "Officer Manns removed . . . Barlow's cellphone and conducted a pat down of his person." The trial court further disagreed with Barlow's contention that Officer Manns lacked reasonable articulable suspicion to search and seize him. The trial court further concluded that the anonymous tip was sufficiently corroborated to support a search and seizure because "Officer Layton upon approaching . . . Taylor immediately observed what the Officer believed to be a firearm. This was consistent with and further corroborated the information provided by the anonymous caller. Almost simultaneously, Officer Manns seized [Barlow] in order to check him for weapons." The court held that "[o]n the evidence presented," it was "also satisfied that the information provided by the anonymous caller to the Officers was sufficiently corroborated." Finally, the trial court also concluded that "Barlow was not subjected to a strip-search."

Barlow subsequently entered a guilty plea conditioned upon an appeal of the trial court's denial of his motion to suppress.[4] This appeal followed.

## II. ANALYSIS

### A. *Standard of Review*

"Under our standard of review of the denial of a motion to suppress, the burden is on the appellant to demonstrate reversible error." *Jones v. Commonwealth*, 52 Va. App. 548, 555 (2008)

---

[4] The sentencing order contains a clerical error; it incorrectly categorizes Barlow's possession of heroin with intent to distribute as a violation of Code § 18.2-246(C). Such conduct is a violation of Code § 18.2-248(C), and it is listed as such on the indictment, sentencing guidelines, and the plea agreement, which was signed by Barlow, Barlow's counsel, the Commonwealth, and the trial court.

(quoting *Emerson v. Commonwealth*, 43 Va. App. 263, 272 (2004)).  "On appeal of a ruling on a motion to suppress, we view the evidence in the light most favorable to the prevailing party, in this case the Commonwealth, granting to the evidence all reasonable inferences fairly deducible therefrom."  *Bland v. Commonwealth*, 66 Va. App. 405, 412 (2016) (citing *Jackson v. Commonwealth*, 267 Va. 666, 672 (2004)).  "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  *Id.* (alteration in original) (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1977) (en banc)).  "However, we review *de novo* the trial court's application of defined legal standards, such as whether the police had reasonable suspicion or probable cause for a search or seizure."  *Id.* (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)).  The "review of the existence of . . . reasonable suspicion involves application of an objective rather than a subjective standard."  *Id.* (citing *Whren v. United States*, 517 U.S. 806, 812-13 (1996)).

B.  *The seizure and search of Barlow was supported by reasonable articulable suspicion.*

Barlow first argues that Officer Manns did not have reasonable articulable suspicion that he was engaged in criminal activity justifying his seizure.  Further, Barlow argues that even if Officer Manns did possess reasonable articulable suspicion justifying a seizure of his person, Officer Manns lacked any reason to believe he was armed and dangerous, and thus Officer Manns's patting him down was unconstitutional.  We disagree.

"Police officers are free to engage in consensual encounters with citizens, indeed, it is difficult to envision their ability to carry out their duties if that were not the case."  *Jones*, 52 Va. App. at 555 (quoting *Malbrough v. Commonwealth*, 275 Va. 163, 169 (2008)).  "The consensual encounter becomes a seizure . . . 'when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'"  *Id.* at 556-57 (quoting

- 7 -

*Malbrough*, 275 Va. at 169). "A person is 'seized' within the meaning of the Fourth Amendment if, under the circumstances presented, a reasonable person would believe he was not free to leave the scene of an encounter with the police." *Id.* at 557 (quoting *McCain v. Commonwealth*, 261 Va. 483, 490 (2001)).

Here, the trial court found that Barlow was seized when "Officer Manns removed . . . Barlow's cellphone and conducted a pat down of his person." At oral argument, the parties agreed that Officer Manns seized Barlow when he took his cell phone from his hand. We too find that Barlow would not have considered himself free to disengage from Office Manns or leave the scene after Officer Manns took his cell phone. The question remains whether that seizure was permissible under the Fourth Amendment.

"A police officer may elevate a consensual encounter with a citizen into an investigatory detention only if the officer has a 'reasonable suspicion supported by articulate facts that criminal activity "may be afoot," even if the officer lacks probable cause.'" *Jones*, 52 Va. App. at 559 (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). "Reasonable suspicion is a 'particularized and objective basis' for suspecting the person stopped of criminal activity." *Id.* at 559-60 (quoting *Ornelas*, 517 U.S. at 696). "In determining 'whether a police officer had a reasonable suspicion to justify the seizure, we must consider the "totality of the circumstances and view those facts objectively through the eyes of a reasonable police officer with the knowledge, training and experience of the investigating officer."'" *Id.* at 560 (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 421-22 (2003)). Further, "[r]easonableness is judged from the perspective of a reasonable officer on the scene allowing for the need of split-second decisions and without regard to the officer's intent or motivation." *Scott v. Commonwealth*, 20 Va. App. 725, 727 (1995) (citing *Graham v. Connor*, 490 U.S. 386, 396-97 (1985)).

"[A] law enforcement officer is justified in relying upon information from an anonymous tipster in order to briefly detain a suspect for inquiry and investigation only if the anonymous information is 'sufficiently corroborated' to provide it some indicia of reliability." *McGee*, 25 Va. App. at 202 (quoting *Alabama v. White*, 496 U.S. 325, 331 (1990)). "[A]lthough the police do not have to verify every detail provided by an anonymous informant, '[s]ignificant aspects of the informer's information must be independently corroborated.'" *Id.* (alterations in original) (quoting *Gregory v. Commonwealth*, 22 Va. App. 100, 106 (1996)). An anonymous tip's accurate description of a subject's appearance and location, standing alone, is not the sort of information, even when independently corroborated, that can render a seizure reasonable. *Florida v. J.L.*, 529 U.S. 266, 272 (2000). Instead:

> An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

*Id.* Generally, an anonymous tip must provide "predictive information" that allows law enforcement "to test the informant's knowledge or credibility," for that tip, when corroborated, to provide reasonable articulable suspicion justifying an investigatory stop. *Id.* at 271; *see also Jackson*, 267 Va. at 678.

At the moment Barlow was seized, Officer Manns was aware of the information related by the tip, the presence of two men near the Nissan, and the first few seconds of Officer Layton's interaction with Taylor. That interaction, up to the instant Barlow was seized, consisted of Officer Layton looking in the direction of Taylor's right hip or side and asking Taylor if he had a firearm. Officer Layton, after receiving Taylor's answer in the negative, grabbed Taylor's right wrist. The sequence concluded when Taylor reached across toward his right hip with his left hand and Officer

Layton grabbed Taylor's left hand and began to turn Taylor around. Although Officer Manns likely could not see the bulge on Taylor's hip, he could observe Taylor and Officer Layton's interaction. He heard Officer Layton ask Taylor if he had a firearm and observed that despite the negative answer, Taylor began to reach for his waistline, prompting Officer Layton to seize Taylor.[5] Upon seeing Taylor reach for his waistband when asked if he was carrying a firearm, and then seeing Officer Layton focus upon something on Taylor's right hip, it was reasonable for Officer Manns to seize Barlow to investigate whether he too was involved in criminal activity.

Officer Manns had more than an unspecified hunch of criminal activity. Rather, the particular fact was that Barlow's companion reached for his waistband when asked if he was carrying a gun and Officer Layton, an experienced police officer, responded by physically seizing and frisking him. Taylor's reaching for his waistband when asked by a police officer if he was carrying a gun, created a reasonable belief that Taylor was armed and engaged in criminal behavior as reported by the anonymous tip and thus corroborated the anonymous tip. Thus, Officer Manns had reasonable articulable suspicion to briefly detain Barlow at that moment and investigate his involvement in criminal activity as well as to ensure the safety of himself and Officer Layton. While an anonymous tipster's mere physical description of suspects is not enough to create

---

[5] The legality of the seizure and subsequent search of Taylor is not an issue in this appeal. *See, e.g.*, *DePriest v. Commonwealth*, 4 Va. App. 577, 589 (1987) (noting that defendant did not have a reasonable expectation of privacy in his companion's "person" and therefore "lack[ed] standing to contest the arguably illegal search" of the companion).

That being said, this Court has recognized that a defendant's reaching towards an area where a weapon might be secreted after being instructed by law enforcement to keep his hands visible can create reasonable articulable suspicion sufficient to justify a *Terry v. Ohio*, 392 U.S. 1 (1968), stop. *See Jones*, 52 Va. App. at 560-62. Reaching towards a bulge on the waistline in response to an inquiry regarding a firearm is closely analogous. We note this not because the legality of Taylor's seizure presently concerns us, but because the reasonable conclusion that Taylor was armed is relevant to Officer Manns's formation of reasonable articulable suspicion that Barlow was engaged in criminal activity. This is because Taylor's being armed corroborates the anonymous tip, and until that tip was corroborated, Officer Manns could not seize or search Barlow. However, once the tip was corroborated, Officer Manns could seize Barlow to investigate the allegations.

reasonable articulable suspicion of criminal activity, Taylor's actions reasonably created the belief that he was armed, thus corroborating the tip.

Under the totality of the circumstances, once Officer Manns had corroborated criminal details of the anonymous tip, he not only had reasonable articulable suspicion to seize Barlow, but also to pat him down for weapons.[6] *See generally McCain v. Commonwealth*, 275 Va. 546, 554 (2008) (recognizing that reasonable suspicion to conduct a weapons frisk must involve suspicion that the particular person frisked may be armed). This is so for two primary reasons. First, the tip also reported drug activity, and once the accuracy of the tip was corroborated with regard to the firearm in Taylor's possession, the report of drug activity could also be considered by Officer Manns in evaluating whether or not Barlow might be armed and dangerous. The connection between drug transactions and guns is well recognized. *See Jones v. Commonwealth*, 272 Va. 692, 701 n.3 (2006) ("[I]t is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction . . . ." (quoting *United States v. Bustos-Torres*, 396 F.3d 935, 943 (8th Cir. 2005))). Further, beyond these general concerns, the tip was ambiguous as to whether there were one or two guns present, and once the tip proved credible with regard to one gun, it was reasonable for Officer Manns to ensure safety by checking that Barlow was not also carrying a firearm. Therefore, the trial court did not err in denying Barlow's motion to suppress the evidence on grounds of an illegal seizure and pat-down search.

---

[6] We note that Officer Manns did not escalate his seizure of Barlow into a pat-down search until after he observed Officer Layton and an assisting officer recover the handgun from Taylor. Thus, while a reasonable officer could believe that Taylor was armed based upon his reaching toward his waistline in response to being asked if he was armed, Officer Manns had this reasonable belief confirmed by discovery of the actual firearm; Manns did not pat down Barlow until all chance of mistake was eliminated, despite the standard of reasonable articulable suspicion not requiring that degree of certainty.

C. *Any strip search of Barlow was justified and reasonable.*

Barlow contends that he was subjected to an unjustified strip search. We assume without deciding that he was subjected to a strip search but find that any such search was reasonable under the Fourth Amendment.

We find that the best and narrowest grounds upon which we can render a decision is to conclude that even if Barlow was subjected to a strip search, the search was justified; thus we affirm the decision of the trial court despite relying upon a different reason than that upon which the trial court based its decision. *See Vandyke v. Commonwealth*, 71 Va. App. 723, 731 (2020). "Under the right-result-different-reason principle, an appellate court 'do[es] not hesitate, in a proper case, where the correct conclusion has been reached but [a different] reason [is] given, to sustain the result [on an alternative] ground.'" *Id.* (alterations in original) (quoting *Banks v. Commonwealth*, 280 Va. 612, 617 (2010)). This principle is applicable when two conditions are met: (1) the record demonstrates that "all evidence necessary to" support the "alternate ground was before the trial court," and (2) such evidence was "undisputed" or any dispute was resolved by the factfinder. *Id.* at 732. Here the record contains sufficient facts regarding the search for us to conclude that even if it did rise to the level of a strip search, it was justified.

While "[a] lawful custodial arrest authorizes a full search of the person[,]" a "strip search[] require[s] special justification since they are peculiarly intrusive." *Taylor v. Commonwealth*, 28 Va. App. 638, 642 (1998). "In each case we must balance the need for the particular search against the invasion of personal rights that the search entails." *Id.* (internal quotations omitted). "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

Here, the special justification for the search was Barlow's reaching into his pants. It was perfectly reasonable for officers to believe Barlow possessed either contraband or a weapon. He had already been found to be in possession of marijuana, and the tip had indicated the presence of guns and drugs. Officers were justified in believing a search of the back of Barlow's pants was necessary to negate any danger to themselves or Barlow. Weighed against this particularized need is the minimally intrusive nature of the search. This was at most only a strip search, not a visual body cavity search nor a manual body cavity search. Even considered as a strip search, this search was much less invasive than a full disrobing. Officers merely pulled Barlow's waistband down and back from his body revealing part of his buttocks. Neither his genitals nor his anus were exposed. Barlow alleges that the place of the search was inappropriate, but the record clearly indicates that despite the search being conducted on a public street with several people in the area, police officers formed a line between Barlow and the bystanders to shield him from view. Thus, we find nothing unreasonable about the place and manner of the search.

Because there was a specific justified need to search the back of Barlow's clothing, the intrusion was minimal relative to the need for the search, and because the time, place, and manner of the search were reasonable, we find the strip search did not constitute a violation of Barlow's Fourth Amendment rights.

### III. CONCLUSION

Because we conclude that the trial court did not err in finding the search and seizure of Barlow was supported by reasonable articulable suspicion, and because the search of the back of Barlow's pants was reasonable in time, place, and manner in response to a specific justified need, we affirm the judgment of the trial court. However, we remand this matter to the trial court solely

for the limited purpose of correcting the sentencing order to reflect that Barlow was convicted for possession of heroin with intent to distribute in violation of Code § 18.2-248(C).

*Affirmed and remanded.*