COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Ortiz and Friedman
Argued at Norfolk, Virginia

MARQUI RASHAWN PITTMAN

MEMORANDUM OPINION[*] BY
v.      Record No. 1316-22-1      JUDGE MARY BENNETT MALVEAUX
OCTOBER 17, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Timothy S. Fisher, Judge Designate

Charles E. Haden for appellant.

Liam A. Curry, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following a jury trial, Marqui Rashawn Pittman ("appellant") was convicted in the Newport

News Circuit Court of first-degree murder, in violation of Code § 18.2-32, robbery, in violation of

Code § 18.2-58, and two counts of using a firearm in the commission of a felony, in violation of

Code § 18.2-53.1. Appellant contends that the evidence was insufficient to support his convictions.

Appellant also argues that the trial court erred in refusing his proposed jury instructions. For the

following reasons, we affirm his convictions.

I. BACKGROUND

On appeal, we view "the evidence in the light most favorable to the Commonwealth, the

prevailing party in the circuit court, and we accord the Commonwealth the benefit of all reasonable

inferences deducible from the evidence." *Britt v. Commonwealth*, 276 Va. 569, 573 (2008).

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

On November 25, 2016, Newport News police officer J.N. Garber arrived at an apartment complex in response to a reported shooting. When he arrived, Officer Garber observed a man he recognized as Tommy Strayhorn lying face down in the entryway to one of the apartment buildings. Strayhorn had multiple gunshot wounds and only a slight pulse, and was not breathing. Officer Garber accompanied Strayhorn to a hospital and later collected his belongings. He then returned to the apartment building and gave Strayhorn's belongings to the crime scene technician. Those belongings did not include a Gucci bag containing money. Strayhorn succumbed to his injuries a few days later.

Latasha Lee was staying with her friends, Joe and Michelle Reaves, in one of the apartments on the day of the shooting. Strayhorn, Felton Berrian, and Tarique Lomax were at the apartment with her at various times throughout the day. In the evening, appellant arrived and asked for a cigar and inquired if anyone had change for a $20 bill. Strayhorn pulled change out of his pocket and gave it to appellant. During the exchange, appellant held his phone in his hand "like he was taking a picture of something." Strayhorn carried a green and red Gucci bag with him, although Lee did not know what the bag contained. Appellant then asked Joe Reaves to go to the store with him, and the two men left. Strayhorn, Berrian, and Lomax also exited the apartment.

About ten minutes later, Lee heard gunshots. Peering through the window, Lee observed two people in dark clothing "standing with guns in their hands." She could not see who the men were because it was dark. Lomax approached the window and told Lee to call 911 because Strayhorn had been struck by gunfire. When someone else in the apartment opened the apartment door, Lee saw Strayhorn lying on the ground.

An autopsy revealed that Strayhorn suffered a fatal gunshot wound to his head and neck when a bullet entered through his right ear and pierced the top of his neck, injuring his spinal cord. Strayhorn also suffered a gunshot wound to his right ankle.

- 2 -

Berrian testified that he was outside the apartment with Strayhorn when appellant and brothers James and Kardara Miles arrived in a silver or gray minivan and started talking with them. Berrian, Strayhorn, and appellant then went inside the apartment so appellant could say hello "to everybody that was in the house." After they left the apartment, appellant "walked off" as Lomax arrived. Berrian, Strayhorn, and Lomax were "talking and laughing and joking and stuff" when "the Miles brothers walked up." James Miles pointed a silver revolver at Strayhorn and said, "let me get that bag," as Kardara Miles, who also held a firearm, instructed Strayhorn, Berrian, and Lomax to empty their pockets. James Miles fired two shots in the air because he did not believe that Strayhorn gave him everything that Strayhorn possessed at the time. James Miles and Kardara Miles then both started shooting in Strayhorn's direction before running off. According to Berrian, during the incident, appellant stood next to the minivan approximately 33 feet away. When Berrian neared Kardara Miles, appellant, who was also holding a firearm, said, "nope, don't think about it." The Miles brothers and appellant then left the scene in the van, taking Strayhorn's Gucci bag with them.

Lomax testified that he, Strayhorn, and Berrian were standing outside by the door "chit-chatting" when James Miles approached and asked for a lighter. Lomax stated that James Miles then pointed a gun at Strayhorn and said, "give me the bag." After Strayhorn put the Gucci bag on the ground, James Miles said, "I know you got more, give me more," and fired two shots in the air. Kardara Miles was also standing there holding a gun. Lomax further testified that at first, appellant and Joe Reaves were standing "a little ways down the sidewalk," but as Strayhorn and James Miles continued to argue, appellant approached with his own firearm and told Strayhorn, "I told you we're going to get you, I told you we're going to get you." When Strayhorn tried to run inside "shots started going off." Lomax ran behind some bushes until he saw appellant and the

Miles brothers running away. James Miles took the Gucci bag with him. Lomax testified that Strayhorn normally carried money in the Gucci bag.

Appellant moved to strike the evidence and argued that, at best, the evidence proved he was an accessory after the fact to the crimes. The trial court denied his motion to strike, and the jury convicted him of first-degree murder, robbery, and use of a firearm in the commission of those felonies. This appeal followed.

## II. ANALYSIS

### A. Sufficiency of the Evidence

Appellant argues that the evidence failed to prove he was a principal actor in the robbery and murder. He claims the evidence proved only that he acted as an accessory after the fact.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"A principal in the first degree is the actual perpetrator of the crime." *Muhammad v. Commonwealth*, 269 Va. 451, 482 (2005) (quoting *Jones v. Commonwealth*, 208 Va. 370, 372

(1967)). "A principal in the second degree is one not the perpetrator, but present, aiding and abetting the act done, or keeping watch or guard at some convenient distance." *Johnson v. Commonwealth*, 58 Va. App. 303, 318 (2011) (quoting *Rollston v. Commonwealth*, 11 Va. App. 535, 539 (1991)). To prove "a defendant guilty as a principal in the second degree, the Commonwealth must establish that the defendant procured, encouraged, countenanced, or approved the criminal act." *McMorris v. Commonwealth*, 276 Va. 500, 505 (2008). "[A] defendant is guilty as a principal in the second degree if he is guilty of some overt act done knowingly in furtherance of the commission of the crime, or if he shared in the criminal intent of the principal committing the crime." *Id.*

As appellant correctly notes, "[m]ere presence during the commission of a crime and subsequent flight do not constitute sufficient evidence to convict a person as a principal in the second degree." *Moehring v. Commonwealth*, 223 Va. 564, 567 (1982). "The Commonwealth must prove that the defendant consented to the felonious purpose and the defendant contributed to its execution." *Brickhouse v. Commonwealth*, 276 Va. 682, 686 (2008) (quoting *McMorris*, 276 Va. at 505). However, "[e]very person who is present at the commission of a [crime], encouraging or inciting the same by words, gestures, looks, or signs, or who in any way, or by any means, countenances or approves the same is, in law, assumed to be an aider and abettor, and is liable as principal." *Dunn v. Commonwealth*, 52 Va. App. 611, 617 (2008) (second alteration in original) (quoting *Foster v. Commonwealth*, 179 Va. 96, 99 (1942)).

Further, "[t]he status of the accused as a principal in the second degree may be established by any combination of circumstantial evidence or direct evidence." *Brickhouse*, 276 Va. at 687. "Circumstantial evidence [presented during the course of the trial] is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Salcedo v. Commonwealth*, 58 Va. App. 525, 535

(2011) (alteration in original) (quoting *Holloway v. Commonwealth*, 57 Va. App. 658, 665 (2011)). "The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003). Moreover, it is the duty of the fact finder to "determine[] which reasonable inferences should be drawn from the evidence[] and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant." *Young v. Commonwealth*, 70 Va. App. 646, 654 (2019) (second alteration in original) (quoting *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017)). "Consequently, whether the evidence excludes all reasonable hypotheses of innocence is a 'question of fact,' and like any other factual finding, it is subject to 'revers[al] on appeal only if plainly wrong.'" *Id.* (alteration in original) (quoting *Thorne v. Commonwealth*, 66 Va. App. 248, 254 (2016)).

Appellant argues that the Commonwealth presented no evidence showing he shared in the criminal intent of the Miles brothers or that he acted in any way to assist, incite, or encourage them to commit the crimes. We reject his argument and instead conclude from the proven facts and circumstances presented at trial that it was reasonable for the fact finder to find that appellant acted as a principal in the second degree in the robbery and murder of Strayhorn. The evidence proved that appellant arrived with the Miles brothers to the scene of the crime. He then asked Strayhorn to exchange a $20 bill and appeared to take a photograph of Strayhorn during the exchange of that money. Appellant then stood at a distance while Strayhorn was robbed of his Gucci bag, approached during the robbery to remind Strayhorn of the robbers' shared intent to "get him," prevented Berrian from interfering by displaying a firearm, and then fled with the Miles brothers after the offenses were completed. These proven facts, along with all reasonable inferences drawn from those facts, supported the jury's conclusion that appellant acted as a principal in the second degree.

We do not find the evidence insufficient, as asserted by appellant, because Berrian did not testify, as Lomax did, that appellant approached the men during the robbery and yelled, "I told you we're going to get you." It is well settled that "[p]otential inconsistencies in testimony are resolved by the fact finder." *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011). "We do not revisit such conflicts on appeal 'unless "the evidence is such that reasonable [persons], after weighing the evidence and drawing all just inferences therefrom, could reach but one conclusion."'" *Id.* (alteration in original) (quoting *Molina v. Commonwealth*, 47 Va. App. 338, 369 (2006)). We find no reason in the record to disturb the jury's resolution of the slight differences between Berrian and Lomax's respective testimony.

In sum, the evidence presented at trial sufficiently established that appellant acted as a principal in the second degree in the commission of the robbery and resulting murder of Strayhorn. Thus, the jury's rejection of appellant's assertion that he did not assist in the commission of the offenses was not plainly wrong.

### B. Jury Instructions

Appellant also argues that the trial court erred in refusing his proposed accessory-after-the-fact jury instructions.

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019) (quoting *Darnell v. Commonwealth*, 6 Va. App. 485, 488 (1988)). We review a trial court's decisions in giving and denying requested jury instructions for abuse of discretion. *Barney v. Commonwealth*, 69 Va. App. 604, 609 (2019). "[W]hether a jury instruction accurately states the relevant law is a question of law that we review de novo." *Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)).

In *Commonwealth v. Dalton*, 259 Va. 249 (2000), the trial court refused a defendant's proposed accessory-after-the-fact jury instruction upon its finding that "accessory after the fact" is not a lesser-included offense of murder. *Id.* at 251. The defendant argued on appeal that the trial court abused its discretion in refusing his "accessory-after-the-fact jury instruction" where the instruction, according to the defendant, was supported by the evidence. *Id.* The Virginia Supreme Court affirmed the decision of the trial court, explaining that "an accused cannot be convicted of a crime that has not been charged, unless the crime is a lesser-included offense of the crime charged." *Id.* at 253. The Court reasoned that "neither the Commonwealth nor an accused is entitled to a jury instruction on an offense not charged, unless the offense is a lesser-included offense of the charged offense" and concluded that since "the crime of being an accessory after the fact is not a lesser-included offense of the crime of murder," the defendant was not entitled to an accessory-after-the-fact jury instruction. *Id.* at 253-54.

In the present case, appellant was not charged with being an accessory after the fact to either the robbery or the murder.[1] Therefore, as in *Dalton*, the trial court correctly refused to grant the accessory-after-the-fact instructions. We decline appellant's invitation to overrule the *Dalton* decision. Even if we were to agree with appellant that *Dalton* was wrongly decided, "we are bound by decisions of the Supreme Court of Virginia and are without authority to overrule" them. *Roane v. Roane*, 12 Va. App. 989, 993 (1991). The trial court did not abuse its discretion in refusing appellant's proposed instructions.

### III. CONCLUSION

For the foregoing reasons, we hold that the evidence was sufficient to support appellant's convictions for robbery, murder, and use of a firearm in the commission of those offenses. We also

---

[1] Appellant concedes that the accessory after the fact offense is not a lesser-included offense of the robbery; therefore, our analysis applies to both offenses.

find no abuse of discretion in the trial court's refusal of appellant's proposed accessory-after-the fact jury instructions.

*Affirmed.*